JOSEPH R. HUBBARD, ELLEN L. JEFFRIES and
HORACE B. JEFFRIES, Appellants, v. LU-
THER C. SLAVENS and SALLIE SLAVENS.

Division One, March 31, 1909.

1. **APPEAL: Equitable Defense: No Evidence Preserved.** Where
plaintiffs have omitted from the record all the evidence heard
at the trial, they will be held on appeal to admit that the re-
spondents put in evidence below to establish every jot and tittle
of their whole defense—legal and equitable.

2. ————: ————: ————: **Argument of Merits.** In such case
any argument of the merits on the facts is afield and inap-
propriate.

3. **EJECTMENT: Equitable Defense: Unsettling Ancient Rights.**
Courts turn a cold eye and a face of stone to an attempt to
judicially unsettle land titles fortified by the healing influence
of time, on which owners have rested securely for a half cen-
tury. Where the father of the plaintiff remaindermen received
the money for the land in question nearly fifty years before
the suit is brought, it will be intolerable to elevated justice
to permit the remaindermen (his children) to recover it ex-
cept on the sternest principles of plain law.

4. **MOTION TO STRIKE OUT: Waiver: Demurrer in Effect.**
Where plaintiff files a motion to strike out defendant's answer,
by pleading over on the merits he waives his right to insist
that the court erred in overruling his motion. Nor is such
waiver obviated by the fact that the motion in some of its
phases covers the same ground as a general demurrer. It is
confusing orderly procedure to treat a demurrer and a motion
to strike out as interchangeable and to be used indifferently.
They fulfill a different office—the demurrer seeking a judgment
on an issue at law; the motion, a mere order.

5. **TRIAL BY JURY: Equity or Law Case: No Evidence Pre-
served.** Where the evidence is not preserved in the bill of
exceptions, the court will consider a ruling of the trial court
denying to plaintiffs a right to a trial by jury; for the trial court
having construed the answer as putting the cause in chancery,
the question presented is one of jurisdiction, that is, whether
the court had the right to proceed to a trial without a jury.
In such case it is not clear how the evidence would throw any
light on the question.

6. ————: ————: **Ejectment: Equitable Defenses.** If the an-
swer to plaintiff's ejectment pleads such substantive facts as

entitle defendants to affirmative equitable relief, the cause is in chancery, and a jury should be denied plaintiff.

7. ——————: ——————: ——————: ——————: Estoppel in Pais. Though it be admitted that matter constituting equitable estoppel *in pais* is a good defense at law in an ejectment suit, it would be a *non sequitur* to say the defendant may not use the same matter of estoppel *in pais* as grounds for affirmative relief in equity, where alone he can get such relief.

8. ——————: ——————: ——————: ——————: ——————: Binding on Heirs: Knowledge. An estoppel binding an ancestor is binding on his heirs and devisees. So that if the father of plaintiffs, through whom they claim as remaindermen, was estopped to assert title to the land, they likewise are estopped, whether or not they had knowledge of the matters which would have estopped him.

9. PRACTICE: Demurrer: Answering. By answering over plaintiffs waived their demurrer to defendants' cross petition on every proposition except that the cross petition did not state a cause of action.

10. EJECTMENT: Limitations: Thirty Years: Duty to Pay Taxes. Where the testator was estopped to lay claim to the land, for that he had received the money for which he sold it, there was nothing upon which the life estate given by the will to the wife could operate, and therefore it is beside the question to decide whether the duty was upon the life tenant and not upon the remainderman to pay the taxes, or whether the thirty-year Statute of Limitations pleaded by defendant is or is not a good defense to the remaindermen's suit in ejectment.

11. PLEADING: Exhibits: Speaking Demurrer. A demurrer strikes squarely at the face of the petition and nowhere else. Mere exhibits constitute no part of the petition for the purposes of a demurrer.

12. ——————: Equitable Defense: Limitations: Demurrer. A demurrer to defendants' answer in ejectment, setting up matters which constitute an affirmative equitable defense, will not be sustained on the ground that the pleaded matter is barred by the Statute of Limitations, if to sustain it the whole equitable defense would be struck down for every purpose, whether as a mere bar or as a cross action.

Appeal from Ray Circuit Court.—*Hon. J. W. Alexander*, Judge.

AFFIRMED.

*English & English* for appellants.

(1)    The demurrer to the second defense and the motion to strike the same out should have been sustained for the reason that the thirty-year Statute of Limitations does not apply. That statute was adopted in 1889. Hunt v. Searcy, 167 Mo. 184; Hall v. French, 165 Mo. 430; Howell v. Jump, 140 Mo. 441; Shumate v. Snyder, 140 Mo. 77; Pryor v. Winter, 83 Pa. St. 202. (2)    The power of attorney was insufficient to convey after-acquired title. It was recorded; therefore, King knew its contents. Greve v. Coffin, 14 Minn. 264; Allis v. Goldsmith, 22 Minn. 123; Penford v. Waiver, 96 Mich. 139; Weare v. Williams, 85 Ia. 253; Union Trust Co. v. Meous, 201 Pa. St. 374. (3)    Defendants allege matters they claim as an estoppel. These allegations are matters *in pais,* and there is no allegation in the petition that these defendants were in any way affected by those matters, or relied thereon, and therefore such matters do not constitute a defense to plaintiffs' petition.    (a)    There is no allegation in the answer anywhere that any one of these acts pleaded as an estoppel were ever called to the attention of defendants at any time, or that they changed their position on account of anything plaintiffs' ancestors or they have done, and therefore this in no manner authorized these defendants to plead or prove them. There can be no estoppel unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action. Rosencranz v. Swofford Bros. D. G. Co., 175 Mo. 537; Burke v. Adams, 80 Mo. 504; Blodgett v. Perry, 97 Mo. 263; Rogers v. Marsh, 73 Mo. 64; Eitelgeorge v. Mutual House Bldg. Assn., 69 Mo. 57; Barnes v. Perry, 61 Mo. 449; 11 Am. and Eng. Ency. Law (2 Ed.), 439, and notes; 16 Cyc. 744 and notes; Ralls v. Ritter, 180 Ill. 161; Pleasant Hill Light & P. Co. v. Quinton, 109 S. W. 1061. (b)    A party cannot be divested of his title by estoppel. Foster v. Hobson, 107 N. W. 1101.    Nor do estates pass by es-

toppel. Turner v. Baker, 64 Mo. 218. (c) All mat-
ters alleged in the answer except those of the notes and
mortgages are matters not in writing. Where an es-
toppel *in pais* has been invoked against claim of title
to real estate, the doctrine is opposed to the letter of
the Statute of Frauds, and would greatly impair the
security of titles to real estate if they were allowed.
Miller v. Graves, 38 Ill. 457; Patterson v. Huchcach,
3 Cal. 535; Martin v. Railroad, 83 Me. 100; Trenton
Banking Co. v. Duncan, 86 N. Y. 221; Bolling v. Peters-
burg, 3 Rand 563. (d) An essential to estoppel by
misrepresentation or concealment is that the party
pleading it should have relied upon the conduct of the
other, and been induced by it to act or refrain from
acting. Blodgett v. Perry, 97 Mo. 263; Bales v. Perry,
51 Mo. 449; Wright v. McPike, 70 Mo. 175; Acton v.
Dooley, 74 Mo. 63; State Bank v. Frame, 112 Mo. 502;
Smith v. Roach, 59 Mo. App. 295. (4) The mortgage
from Hubbard to Ranson was a void instrument. Sec.
15, ch. 32, p. 35, R. S. 1855. It was unsealed and failed
to describe the land in dispute. (5) The Statute of
Limitations could not apply to plaintiffs' cause of act-
ion for the reason that the entry of Hite under the void
foreclosure sale broke the continuity of possession of
King within ten years from the time of King's alleged
entry, and while plaintiffs had no right to sue, Hite's
entry being adverse to King. (a) To tack possession
to a preceding adverse possession must be by and
solely under contract or conveyance valid on its face. 1
Cyc. 1007, 1008, note 2; Simpson v. Dowing, 23 Wend.
216; Chouquette v. Barada, 23 Mo. 331; Shaw v. Nich-
olay, 30 Mo. 99; Crispen v. Hannavan, 50 Mo. 536. (b)
The deeds from Hite to Gates and from Gates to
Slavens being void, not describing the property, were
not color of title and not sufficient to tack Hite's prior
possession. Each entry was a new entry. The plead-
ing, therefore, shows the Statute of Limitations did not
apply to plaintiffs. (6) The motion to strike out

should have been sustained. This pleading violates Sec. 592, R. S. 1899, in not being plain and concise. Mallinckrodt v. Nemnich, 169 Mo. 388; Sidway v. Land Co., 162 Mo. 374; Goldman v. Gilliland, 10 Sawyer 636; Pomeroy's Code Remedies, sec. 517; Chitty on Pleading, 245. (7) The third defense is legal, not equitable, and plaintiffs could not be deprived of their right to trial by jury thereby. The court erred in overruling plaintiffs' demand for jury trial. U. S. Const., Bill of Rights; Const. of Mo., Bill of Rights, 17; R. S. 1899, sec. 691. (a) In ejectment suits, right of trial by jury has always existed, and equitable defenses are triable at law in ejectment suits. O'Day v. Conn, 131 Mo. 321; Pomeroy's Equity Jurisprudence, sec. 802. The prayer for such other and further relief has no application to the facts stated. State ex rel. v. Evans, 176 Mo. 310, 317; Jennings v. Moon, 135 Ind. 173. (b) Plaintiff cannot sue in equity when his claim constitutes a defense to an action at law. 17 Ency. Pl. and Pr., 277 and 285; 6 Am. and Eng. Ency. Law, 153. (c) It is not necessary to go into a court of equity for the purpose of obtaining an equitable estoppel, when the case is not otherwise of equitable jurisdiction. 11 Am. and Eng. Ency. Law, 421, note 2; Bevard v. German Savings Institute, 44 Mo. 445; Concord v. Norton, 16 Fed. 477; Drexel v. Biring, 16 Fed. 552; Shilito Co. v. McChesney, 45 Fed. 478. (d) Where the execution of a paper is one of the main issues being tried, it is error to take the case from the jury. If the contract set out is in the case, it is one of the main issues and is specifically denied. Grady v. Ins. Co., 60 Mo. 116; North Pa. Coal Co. v. Snowden, 42 Pa. St. 488; Donahue v. Meister, 88 Cal. 121; Hannah v. Kranz, 167 Ill. 121; Fountaine v. Hudson, 93 Mo. 62; Sneathen v. Sneathen, 104 Mo. 201; Whiting v. Stevens, 97 Ill. 182; State v. Hamey, 168 Mo. 167; Tinsley v. Kemrey, 170 Mo. 310; State v. Bockstruck, 136 Mo. 335; Edwardson v.

Barnbord, 50 Mo. 81; Grand Lodge v. Elwoner, 26 Mo. App. 108.

*L. C. Slavens* and *L. H. Waters* for respondents.

(1)   In determining the sufficiency of a pleading the court cannot look beyond it to exhibits filed with it. Hoyt v. Oliver, 59 Mo. 189; Hickory Co. v. Fugate, 143 Mo. 79. The exhibits were no part of respondent's answer. State ex rel. v. Crumb, 157 Mo. 547; Pomeroy v. Fullerton, 113 Mo. 453.   (2)   By filing a reply after plaintiffs' demurrer and motion to strike out were overruled they waived every objection made to defendants' answer except that it did not state facts sufficient to constitute a cause of action or a defense. Leise v. Meyer, 143 Mo. 556; Hudson v. Cahoon, 193 Mo. 557. (3)   The petition alleges that Hubbard died in July, 1861. It is alleged in the second defense that defendants and those under whom they claim have been in the adverse possession of the premises in question for a period of 48 years, next before the commencement of this suit, and states a case within the purview of Sec. 4268, R. S. 1899. Collins v. Pease, 146 Mo. 135; De Hatre v. Edmonds, 200 Mo. 267; Crain v. Peterman, 200 Mo. 299.   (4)   Defendants in their third defense state a cause of action on which they are entitled to equitable relief. The facts alleged in defendants' third defense constitute an equitable estoppel and entitled them to a decree vesting the title to the premises in question in them. Martin v. Railroad, 93 Me. 100; 2 Pom., Eq. Juris., sec. 803. Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity from asserting rights which might perhaps have otherwise existed either of property, contract or of remedy, as against another who has in good faith relied upon such conduct and has been led to change his position for the worse. Martin v. Railroad, supra; Wilkins v. Gibson, 113 Ga. 38; Galbraith v. Lunsford,

87 Tenn. 89; 2 Pom. Eq. Juris., sec. 810; Hill v. Black-welder, 113 Ill. 283; Thompson v. Borg (Minn.), 95 N. W. 896; Kirk v. Hamilton, 102 U. S. 69. At the time Summers, as attorney in fact for Hubbard and wife, made the deed of September 22, 1857, for the premises in question to King, under the power dated in September, 1856, King knew that Summers, under that power of attorney, mentioned in this defense, had joined with Hubbard as attorney in fact for Mrs. Hubbard in the execution of the said mortgage on said premises to Ranson, and knew that Hubbard, before said deed was executed, had directed Summers to make said deed to King as attorney in fact for himself and wife, under the same power of attorney, and King was thereby led to believe and did believe that said Summers had authority to make said deed, and paid the greater part of the purchase price to Hubbard in his life time and the balance to his estate, then Hubbard in his life time was estopped from denying that Summers had authority to make said deed and his heirs, the plaintiffs, are bound by his acts and conducts. Mechem on Agency, secs. 84, 707; Story on Agency, sec. 127; 2 Smith Ld. Cases, pp. 744-764, 765; Johnson v. Hurley, 115 Mo. 520; Oak Grove Soc. v. Murray, 145 Mo. 622; Hubbard v. Glass Works, 188 Mo. 43; Smith v. Shelley, 12 Wall. 358; Barnett v. Smart, 158 Mo. 181; Murray v. Mayo, 157 Mo. 248; Herman on Estoppel, secs. 1081, 1088; Jones v. Bliss, 48 Minn. 307; 2 Pom., Eq. Juris., sec. 821. The appropriation of the doctrines of equity by the common law will not estop the right to seek redress by an application in due form to equity. If estopped by his acts and conduct, a court of equity will decree a conveyance or vest the title. Hubbard v. Glass Works, 188 Mo. 43; Herman on Estoppel, secs. 744, 835; 2 Smith Ld. Case, pp. 734-740; Kirk v. Hamilton, 102 U. S. 69; Bigelow on Estoppel, 557. (5) If, upon the facts stated in this defense, defendants are entitled to equit-

able relief, plaintiffs were not entitled to a jury. O'Day v. Coun, 131 Mo. 325; Shaffer v. Detie, 191 Mo. 388; Martin v. Turnbaugh, 153 Mo. 172.  (6)  The Statute of Limitation has no application to an equitable defense even where affirmative relief is asked.  On that ground the demurrer to this defense was properly overruled.  Butler v. Carpenter, 163 Mo. 604.  (7) The courts regard such suits as this with disfavor.  Williams v. Mitchell, 112 Mo. 313; Osborne v. Welden, 146 Mo. 185; Hubbard v. Glass Works, 188 Mo. 35.  "Such suits, if successful," in the language of Judge Scott, "would make the dead sin in their graves."  McLannahan v. West, 100 Mo. 324.  (8)  Equitable estoppel *in pais* originated in equity, and was there enforceable for all purposes.  It gradually became enforceable also in courts of law as a bar, but no further, since courts of law can give no affirmative relief.  Opposing counsel claims that because our third equitable defense might be used as a defense at law, sufficient to bar plaintiffs from claiming possession in this ejectment suit, we cannot therefore take it into equity by asking affirmative relief.  That is not the law.  Olreichs v. May, 15 Wall. 43.

LAMM, P. J.—Plaintiffs Joseph R. and Ellen L., as the only children of Chester Hubbard, deceased, and as remaindermen under his will, uniting with Ellen's husband, Horace B., sue defendants (husband and wife) in ejectment in the Jackson Circuit Court on October 26, 1905.  Defendants answer by way of a general denial, by way of the thirty-year Statute of Limitations, and by way of an equitable defense upon which they ask affirmative, equitable relief.

From a decree for defendants, plaintiffs appeal.

The bill of exceptions, containing no evidence, contents itself, *first,* with showing plaintiffs' motion to strike out parts of the equitable defense, the adverse ruling of the court thereon, and an exception saved;

*second,* plaintiffs' motion to submit the cause to a jury, the adverse ruling of the court and an exception; and, *third,* plaintiffs' motions for a new trial and in arrest, the adverse rulings thereon and exceptions.

The abstract of the record proper shows the petition, the answer and copies of exhibits A. B. C. and D, a demurrer to the second and third defenses, the order of the court overruling the demurrer, the order of the court overruling the motion to strike out, the reply, the decree, the affidavit for an appeal, the order allowing one and the record entry showing that the bill of exceptions was settled, allowed, signed and filed.

Points made seek some elaboration of the pleadings, *viz:*

The petition charged that Chester Hubbard died in 1861, seized of certain real estate in Kansas City, Missouri (describing it); that he left a will probated in Iowa at the county of his domicile (also in Jackson county, Missouri, in 1865); that by such will he devised to Mary R., his wife, all his real estate with remainder over to plaintiffs, his children, share and share alike; that Mary R. died in January, 1900; and that her life estate fell in and said remaindermen became entitled to possession. Ouster is laid as of February 1st, 1900.

Attending to the answer, it denies all allegations not expressly admitted true, admits possession, avers that the defendant, Luther C., has been husband of the defendant, Sallie, for forty-five years, avers that they are now, and they and those under whom they claim have been, in open, notorious and continuous adverse possession under a claim and color of title for forty-eight years; that the title emanated from the government seventy years ago; that neither the said Chester in his lifetime nor the plaintiffs since his death have been in possession nor paid any taxes for said forty-eight years; nor have plaintiffs brought any action to recover said premises under Revised Statutes

1899, sec. 4268; wherefore, they pray judgment that the title of plaintiffs be adjudged barred and that the title be vested by the court in the defendant Sallie.

By the third defense it is alleged plaintiffs are the children and only heirs at law of Chester Hubbard who died July 21, 1861; that by will he left the real estate belonging to him to his wife for life and to his children in remainder; that plaintiffs claim the real estate in controversy as devisees or heirs, but that Chester was not seized of the premises at the time of his death and, therefore, plaintiffs took nothing under the will either as remaindermen or heirs.

To this end, it sets forth elaborately in many pages of print, facts constituting an equitable defense and upon which affirmative relief is predicated. For instance (summarizing): It alleges that on the 16th day of September, 1856, Chester and Mary R. Hubbard executed a power of attorney to one Summers authorizing him to collect all debts due them and to lease and sell and convey any real estate belonging to them in Jackson county, Missouri; and to execute and deliver deeds to purchasers, which said power of attorney was put of record one month later and continued in full force and effect until Chester Hubbard's death; that shortly after its execution Hubbard moved to Keokuk, Iowa, where he resided until his death in 1861.

(*Note*: It will aid in understanding the case to say, what will appear presently, that the land sued for was acquired by Hubbard *after* said power of attorney was executed and that such fact creates the main basis of plaintiffs' claim. )

The answer goes on to allege that Hubbard on March 12, 1857, bought from one Ranson a large tract of land for $9,000 (the premises sued for being a part of such large tract); that on that date Ranson conveyed said tract to Hubbard, who, having paid $1,000 theretofore to bind his bargain, on that day executed

to Ranson his three promissory notes for the balance of the purchase money and to secure them executed to Ranson a mortgage on the premises; that Mary R., being absent from the State of Missouri at that time, he (Hubbard) executed the mortgage in his own proper person and caused said Summers to join with him in executing it as the attorney in fact of Mary, under said power, which mortgage was at once put of record; that Hubbard and Summers by their joint act in executing said mortgage construed the power of attorney as authorizing Summers to deal with and convey the premises under said power and that thereby and by its record said Summers was held out to the world by Hubbard as having such authority; that afterwards on the 21st day of September, 1857, said Hubbard, then being in Kansas City, entered into a written agreement to sell and convey the real estate purchased from said Ranson to one King for the sum of $13,500, who agreed to buy at that figure; that the terms of sale evidenced by said contract were a cash payment of $1,500, a certain sum at thirty days, a certain sum ($3,375) on March 12, 1858, a like sum on March 12th, 1859, and like sum on March 12, 1860—all said deferred payments to be secured on the premises by mortgage; that said contract was put in the hands of one Bouton, a notary public; that on the next morning Hubbard, Summers, King and Bouton met at the latter's office and King in pursuance of his contract paid to Hubbard in person the said cash payment, who receipted on the back of the contract for the same and employed Bouton to draft the deed and mortgage; that Hubbard then and there stated he was unable to stay for the preparation and exchange of said instruments but was compelled to go home that afternoon; thereupon he instructed said Summers to execute and deliver the deed to King and instructed King to deliver said notes and mortgage to Summers, and directed the latter to record the mortgage, and went his way; that in pursuance of

those instructions said Summers, as such an attorney in fact of Chester and Mary, did execute to King a warranty deed for said premises and said King made said notes for the deferred payments and made such mortgage as security and delivered them to Summers; that Bouton then delivered said contract to Summers; that the deed to King and the mortgage to Hubbard were recorded shortly, to-wit, on October 14, 1857; that on the same day the deed from Ranson to Hubbard was put of record; that the deed from Hubbard to King was made and executed on behalf of Chester and Mary R. by said Summers by the express direction and instruction of said Chester, who then and there held him out as having authority to make that deed under his said power of attorney; that King at that time knew that Summers had acted as attorney in fact for Mary R. under the same power of attorney by joining in the execution and acknowledgment of said mortgage from Hubbard to Ranson and had notice of the recording of said mortgage and of the fact that Hubbard held Summers out as having full power and authority and that they so construed said power; that said King, having such notice and knowing that Hubbard had instructed Summers as attorney in fact to execute the deed to him (King) he was led to believe that Summers had such power and acting on that belief he paid said cash payment to Hubbard in person and as part of the transaction accepted Hubbard's deed made by Summers as attorney in fact, under said directions and instructions of Hubbard, and made and delivered to Summers, for Hubbard, the said notes and mortgage.

It is next averred that King's notes to Hubbard for the deferred payments were partly paid by King to Hubbard in his lifetime and that the residue was paid to William Holmes, administrator of Hubbard's estate, after his death; that said Holmes was such administrator in Jackson county, and after collecting said

residue of purchase money, he paid out and distributed such proceeds as part of Hubbard's estate and released said mortgage; that Hubbard took possession under Ranson's deed and delivered possession to King on the date of King's deed; that King held actual, open, notorious and continuous adverse possession from that date under claim and color of title until in 1865 he turned over possession to one Hite, who bought the premises.

The answer next averred that Hubbard in his lifetime paid said Ranson payments, except the last one; that the last Ranson note was transferred to one Scruggs; that in March, 1862, in Jackson county, Missouri, Scruggs commenced a suit to foreclose the mortgage, making King, Ranson and the unknown heirs and representatives of Chester Hubbard parties defendant; that Ranson was duly served and service was attempted on the other defendants by publication; that in November, 1862, the suit was dismissed as to the unknown heirs and representatives of Hubbard, and thereupon such proceedings were had that a decree was rendered finding the amount due on the last Ranson note and foreclosing the equity of redemption of the remaining defendants, Ranson and King, and decreeing a sale; that a sale was made and said Hite became the purchaser and received a marshal's deed, which deed assumed and intended to convey the land; that King turned over possession to Hite, and, there being doubts about the validity of the sale, said King executed a deed to the premises shortly thereafter; and that after King's deed to Hite the latter paid Holmes, administrator of Hubbard, the last note due from King to Hubbard and said administrator discharged the lien of the Hubbard mortgage, as said.

The answer then alleges that Hite held adverse, open and continuous possession under his deeds, until in April, 1867, and then conveyed a ten-acre tract of the land to one Gates who went into possession and

held adversely until September 10th of that year, making lasting improvements, and on the 10th of September, 1867, Gates sold and conveyed the north half of his ten acres to defendant, Sallie Slavens, who recorded her deed; that Sallie and her co-defendant, Luther C., entered into possession under their deed and have ever since held open, notorious and continuous adverse possession, and have made lasting and valuable improvements; that said Sallie is the real and equitable owner of the real estate mentioned in the petition, the same being a part of that purchased from Gates; that Chester Hubbard lived four years after the deed made by Summers as attorney in fact to King as aforesaid, knew said deed had been executed and recorded, knew King was in possession of the premises under it and claimed them adverse to Hubbard, knew King was receiving the rents and paying the taxes, knew that he, Hubbard, had a mortgage on said premises, and so knowing during all that time failed to repudiate said deed to King, failed to disclaim any interest in the mortgage and notes given to him by King, failed to make any claim to said premises or the possession thereof, or to pay taxes or demand rent, failed to return any of the purchase money paid him by King, but, on the contrary, he ratified and acquiesced in the execution of said deed to King so made by said Summers as his attorney in fact.

The answer further pleads certain defects and ambiguities in certain deeds in defendants' chain of title and alleges that in certain instances deeds of correction were made (describing them) and in other instances alleges that narrations were made which cured ambiguities and uncertainties.

Based on the foregoing allegations, the answer charges that the conduct, acts, words, conveyances, etc., of Chester Hubbard in his lifetime and those of the said Summers as his attorney in fact, as aforesaid, estopped said Hubbard in his lifetime from denying

that he had conveyed said premises to King as recited in the mortgage and deed, from denying that King became the owner of the premises. It further charges that said acts, conduct and words of Hubbard (again specifying them) not only estopped him from denying that the premises passed to King by the deed to him but estopped him from denying that Summers had authority under the power of attorney and directions and instructions aforesaid to execute King's deed and estopped him in his lifetime from claiming any interest in or title to the premises. That plaintiffs as heirs or devisees are bound by the conduct, act and doings of their ancestor as set forth and may not deny that defendant, Sallie Slavens, is the owner of the premises and are barred and estopped from any interest in said land.

It seems there was an original answer to which Exhibits A, B, C, and D were attached. Without otherwise describing such exhibits or pleading the contents thereof, the trial answer then alleges that said exhibits so attached to the original answer are made a part of the defense of this answer.

It prays that the court adjudge and decree that effect be given to said estoppels and that the title to the premises be vested in defendant, Sallie, and winds up with a prayer for general relief.

The exhibits referred to in the answer need not be set forth.

Plaintiff's demurrer to the second and third defenses was as follows: The defense of the thirty-year statute of repose was assailed because it "does not state facts sufficient to constitute a defense to plaintiffs' petition." The equitable defense was demurred to because it, first, "does not state facts sufficient to constitute a defense to the plaintiffs' cause of action;" second, "it does not state facts sufficient to constitute a cross petition or cause of action in favor of said defendants;" third, because it "shows on its face that if

any cause of action ever existed in favor of said defendants, as stated and claimed in said defense, the same is barred by limitation and lapse of time."

The reply denied some and admitted other averments of the answer and then charged that it was not the duty of plaintiffs as remaindermen to pay the taxes prior to the year 1900 when the life estate of Mary R. fell in. It alleges that it was the duty of "defendants, as life tenants of said estate, to pay the taxes on said estate during the continuance of the life estate." It admits the averments of the answer relating to the will of Chester Hubbard, admits Ranson's deed to Hubbard, that Hubbard entered into possession under it, admits Hite's possession under the marshal's deed, and admits Gates's possession, but avers it was not under color of title, and then proceeds to deny, *seriatim,* the averments of the answer.

The decree follows:

"And now, on this day come the parties herein in person and by their respective attorneys, and this cause coming on to be heard upon the pleadings and evidence in the case and the court having heard the evidence and arguments of counsel, and having considered the same, and being fully advised concerning all and singular the matters herein, doth find:

"First. The court finds the issues made by the petition of plaintiff, and the general denial of the defendants' answer, for the defendants, and against the plaintiffs.

"Second. The court finds the issues raised by the second count of said defendants' answer for the defendants and against said plaintiffs.

"Third. The court finds the issues raised by the third count in said defendants' answer, and the equitable defense therein, in favor of said defendants and against said plaintiffs.

"Fourth. It is therefore ordered, adjudged and

decreed by the court that the said plaintiffs take nothing by their action.

"It is further ordered, adjudged and decreed that the plaintiffs' title in and to the land in controversy in this cause, to-wit, beginning 634½ feet north of the southwest corner of the east half of the west half of the southeast quarter of section thirty-three in township fifty, north, in range thirty-three, west, in Jackson county, in the State of Missouri, and running thence west 182¼ feet, and thence east 235 feet, thence south 182¼ feet, thence west 235 feet to the place of beginning, in Kansas City, Missouri, be and the same is divested out of said plaintiffs and the title to the same be, and hereby is, vested in the said defendant, Sallie Slavens, and confirmed in her, and that said defendants have and recover of said plaintiffs the costs of this suit, and that they have execution therefor."

I.    On such a record some preliminary observations may aid in reckoning our bearing at the outset. They will serve in the nature of a judicial calculation of our latitude and longitude.

(a)    In the first place, appellants have, *ex industria,* kept back every shred of the evidence. That fact is of obstinate and controlling importance; for from such omission it follows invincibly that they are held to admit on appeal that respondents put in competent and sufficient proof below to establish every jot and tittle of their whole defense. That is, to borrow an old-fashioned chimney-corner figure, homely yet speaking, their noses are judicially held to the grindstone of the concession that each and every averment of the answer was proved to the satisfaction of the trial court, and this admission runs like a marking cord through the whole warp and woof of the case.

In order that the full significance of this large admission should stand out in bold relief, we have heretofore set forth at length the substance of the averments of the answer at expense of brevity.

(b)   In the second place (as a corollary), it becomes quite vain for appellants' learned counsel to argue the merits of the case on the facts, as he apparently now and then does in his briefs and as was done orally at our bar.   The facts are not only a sealed book, but are settled against him.

(c)   In the third place, we take the opportunity of saying that it is a matter of tranquil and entire satisfaction to us that the trial court found itself dealing with facts warranting a decree in favor of defendants. To judicially unsettle land titles, fortified by the healing influence of time, on which owners have rested securely for a half century, is a matter of such gravity and anxiety that this court has consistently, during its whole life, turned a cold eye and a face of stone on such efforts (however learnedly and astutely presented, as here), saying so in words with the bark on. For example, in McClanahan v. West, 100 Mo. l. c. 324, it was said: "And it is to be distinctly understood that this court views with disfavor proceedings like the present, instituted nearly the life of a generation after the transaction on which they are supposed to be based occurred, and which, if successful, to paraphrase the strong language of Judge Scott on one occasion, would 'make the dead *sin in their graves.*' "

To this end it is trite learning that the rules of evidence are relaxed in support of ancient and dim transactions—this from the very necessity of things. Not that the adage, Necessity knows no law, is applied, but that courts administer the law to attain just results and to that end use the everyday wisdom, the good sense, of mankind in establishing old transactions.

In aid of a title attacked by these very plaintiffs on grounds somewhat similar to those in this case, Fox, J. [Hubbard *et al.* v. Kansas City Stained Glass Works & Sign Co. *et al.,* 188 Mo. l. c. 35] quoted approvingly from Agnew, J., in Richards v. Elwell, 48 Pa. St. l. c. 364, 367, language in point and not amiss to repeat:

"If the rule," says AGNEW, J., with animation, "which requires the proof to bring the parties face to face and to hear them make the bargain, or repeat it, and to state all its terms with precision and satisfaction is not to be relaxed after the lapse of forty years, when shall it be? . . . There is a time when the rules of evidence must be relaxed. We cannot summon witnesses from the grave, rake memory from its ashes, or give freshness and vigor to the dull and torpid brain."

Chester Hubbard and his estate had the money for the land in question fifty years gone. For his children to now recover the land itself under such circumstances is a proposition so intolerable to elevated justice that no court would give ear to it unless constrained thereto by the sternest principles of plain law. As will presently appear, it is good ground for congratulation that no such principles are known to us.

(d) In the fourth place, we are forbidden by express statute to consider on appeal any exceptions not passed on below. [R. S. 1899, sec. 864.] Therefore, while in this case appellants' brief takes a wide range and many propositions are discussed therein, yet, on referring to the bill of exceptions, we find the statutable chart of our channel well marked out. The exceptions saved in the bill cover two propositions, *viz.*, first, error in overruling the motion to strike out; second, error in overruling the motion to submit the cause to a jury. True, an exception was saved to overruling the motions in arrest and for a new trial, but those motions strike at matters not here for review under the skeleton bill of exceptions, save and except the two enumerated. To the above errors should be added a third, *viz.*: the ruling of the court on the demurrer. Let us attend to them *seriatim*.

## II. Of the motion to strike out.

When a party as an intermediate step in the evolution of a lawsuit files a motion to strike out all or a

part of his adversary's petition or answer, and the court passes an order overruling such motion, the option is presented to the movent to stand on his motion and thus prove his faith by his works, or to plead over to the merits. When, not standing on the motion, he pleads over to the merits and on such joinder of issue of fact pitches his battle in a legal forum, and takes his chance of winning or losing on such joinder (and loses), he may not thereafter "tread back in his tracks and trip up his adversary's heels" on the ruling on the motion. He is held to have waived the motion. His exception is a dead coal and no subsequent blowing, however deft and persuasive, will breathe a spark of fire into it, under the rules of appellate practice in this jurisdiction. [White v. Railroad, 202 Mo. 1. c. 561, *et seq.,* and authorities cited; Hudson v. Cahoon, 193 Mo. 1. c. 557.]

Appellants' counsel frankly concedes, in his brief in reply, so much; except that he argues (as we grasp it) that the motion in some of its phases covers the same ground as a general demurrer and hence should be judged of as a demurrer. But the office of a demurrer is one thing, the office of a motion to strike out is another—the one seeks a judgment on an issue at law, the other seeks a mere order. It is confusing to orderly procedure to treat them as interchangeable and to be used indifferently, the one for the other. [Ewing v. Vernon County, 216 Mo. 681.]

We hold that when appellants joined issue on the facts, by pleading over to the merits by reply to the answer, they waived their motion to strike out.

## III. Of the motion to submit the cause to a jury.

(a) Before the trial began the court construed the answer as putting the cause in chancery, to be heard by a chancellor. Thereupon plaintiffs submitted a written demand in the form of a motion for a jury and saved an exception to the order overruling that motion.

This assignment of error presents the main bone of contention.

It has already been pointed out that the evidence is not preserved in the bill of exceptions. As a general rule, in an equity case, the trial court cannot be compelled to allow bills of exceptions that do not preserve the evidence on the merits. [State *ex rel.* Guinan v. Jarrott, Judge, 183 Mo. 204.] But presently after the Jarrott case, in an equity suit a change of venue was applied for below and disallowed. Thereupon it was contended that appellant could not have his exception to that ruling considered on appeal without bringing up all the evidence. But we refused to so hold, putting our ruling on the ground that the question presented was one of jurisdiction; that is, whether the court had the right to proceed with any trial whatever. On such question we held the evidence on the merits was immaterial, and, therefore, the bill of exceptions need not contain a transcript of it. [State *ex rel.* Priddy v. Gibson, Judge, 184 Mo. 490.] That case was followed in State *ex rel.* Priddy v. Gibson, Judge, in 187 Mo. l. c. 547-8. Since the Jarrott case, *supra,* there has been a line of cases holding that we could not review an equity case on the merits unless all the evidence was preserved and brought here. [Guinan v. Donnell, 201 Mo. 173; Patterson v. Patterson, 200 Mo. 335; Pitts v. Pitts, 201 Mo. 358.]

Considering the grounds upon which the Guinan, the Patterson and the Pitts cases stand we are inclined to hold that, on principle, they do not control the case at bar, but that the Priddy cases do. Allowing some deference to the trial chancellor, equity cases are tried *de novo* (in a sense) in an appellate court on the merits, hence there are manifest reasons why the evidence should be preserved and sent up, none of which pertain to the case at bar. The demand for a jury was in the nature of a challenge to the jurisdiction of the trial judge to try the case on the facts. If he erred in hold-

ing jurisdiction in equity, it is not clear how the evidence on the merits would throw any light on the point. Hence we shall consider the assignment in the absence of the evidence.

(b)    The only question debatable is:    Was the answer such a pleading of substantive facts as entitled defendants to affirmative equitable relief?   If answered, Yea, then the cause went into equity and there was no error in overruling the motion for a jury.   [Pitts v. Pitts, *supra,* and cases cited.]   If answered, Nay, then, in spite of the equitable matter set up by way of defense, the cause continued at law and plaintiffs were entitled to a jury.   [Kerstner v. Vorweg, 130 Mo. 196; Thompson v. Bank, 132 Mo. App. l. c. 228.]

Is there substance in the assignment of error?   We think not.   This, because:

(1)    It is argued that matter constituting equitable estoppel *in pais* is a good defense at law in an ejectment suit.  Granted, but it would be a *non sequitur* to say that a defendant may not use the same matter of estoppel *in pais* as grounds for affirmative relief in equity, where alone he can get such relief.   Estoppels *in pais* originated in equity, they stand on principles of refined ethics and were always a head of equity jurisdiction.   The doctrine was merely borrowed by courts of law as a convenience.   That the law has been enriched and enlarged by such borrowed principle ought not to oust courts of equity from enforcing the ancient principles of equity; for the jurisdiction of equity often runs concurrently with that of law.   If a litigant be in such a fix that on the facts he is entitled to relief and if the relief at law be inadequate, or "if it is not complete, if it does not attain the full end and justice of the case, if it does not reach the whole mischief and secure the whole right of the party in the present time and in the future, equity will intervene and give such relief and aid as the exigency of the particular case

may require." [1 Story, Eq. (11 Ed.), sec. 33; Hanson v. Neal, 215 Mo. 256, and cases and authorities cited.]

Whether in strictness of speech, a title may be *"created"* by estoppel is a refinement of no value in the light of modern equity jurisprudence. If A by his actions and conduct, having not spoken when in conscience he should speak, is estopped to speak when in conscience he should keep quiet, if he by ratification with knowledge, by the receipt of purchase money, by turning over possession or by similar means is estopped to assert title in himself and is also estopped, by the same token, to deny title in B, if he has retained the bare naked legal title to the land under such condition of things as makes him seized merely to B's use—we say, if these things occur (as they do, as shown by this answer) then rounded-out justice demands that one other step be taken, *viz.*: when B asks it in his pleading the chancellor should not let go of his jurisdiction until A's naked and bare legal title is vested out-and-out over into B who already holds the beneficial title—this under the maxim that equity considers that done which should have been done.

In Kirk v. Hamilton, 102 U. S. 1. c. 77, quoting from 2 Smith Lead. Cas., pp. 730-740 (7 Am. Ed. with notes by Hare and Wallace) it is said: "It is well established that an estate in land may be virtually transferred from one man to another without a writing, by a verbal sale accompanied by actual possession, or by the failure of the owner to give notice of his title to the purchaser under circumstances where the omission operates as a fraud; and although the title does not pass under these circumstances, a conveyance will be decreed by a court of equity."

Speaking of the appropriation of the doctrines of equitable estoppel by the common law, Herman lays down the rule to be (2 Herm. on Estoppel, sec. 744) that such appropriation will not "estop the right to seek redress by an application in due form to chan-

cery." A great array of decisions from this court might be cited to sustain the proposition that whether the force of the decree is directed to specific performance, or to some other form of vesting title from one into another, because of matter of equitable estoppel *in pais*, a court of equity is allowed jurisdiction. [See, for example, Hubbard v. Glass Works, *supra;* Kirkpatrick v. Pease, 202 Mo. 471; Shaffer v. Detie, 191 Mo. 377.]

(2) But it is argued (as we grasp the thread of it) that the estoppel does not concern the heirs or devisees of Hubbard, that they are not bound, because they did not participate in the acts of their ancestor, and had no notice or knowledge of those acts, hence, as estoppels proceeds on knowledge, it can not affect them. But counsel in his fervor inadvertently argues unsoundly because he overlooks a proposition, one of the very taproots of the doctrine of estoppel, to-wit, that an estoppel binding an ancestor binds his heirs and privies. "Equitable estoppels," says Herman, "are as binding upon parties and privies as legal estoppels, and are as effectual in courts of law as an equity." [2 Herm. on Estoppel, sec. 787.]

Plaintiffs as heirs and privies are bound.

The assignment of error now up is disallowed.

## IV. Of the demurrer.

(a) By replying over appellants waived their demurrer except on one proposition, *viz.*: that the answer did not state facts sufficient to constitute a cause of action as a cross petition. [Paddock v. Somes, 102 Mo. l. c. 235; Hoffman v. McCracken, 168 Mo. l. c. 343; Hanson v. Neal, *supra.*]

(b) It is argued that the second and third defenses were insufficient in point of law. As to the thirty-year Statute of Limitations it is insisted that it cannot apply because the duty to pay taxes was cast upon the life tenant. But this argument runs in a circle. It

begs the question. It *assumes* Mary R. Hubbard was life tenant under the will. But if the equitable title passed in her husband's lifetime, then she may have been entitled to dower, but a life estate was not cast upon her by the will. There was nothing for that will to operate upon, and no life tenant, or remaindermen so far as the property in this suit is concerned.

(c) The principal argument in support of the assignment of error runs on the theory that we should look into the exhibits filed with the answer and, so looking, we would discover that the petition states no cause of action. Whatever may be the doctrine elsewhere there is no such thing as a "speaking demurrer" known to the jurisprudence of this State—that is, a demurrer that alleges affirmative matter which, taken with the allegations in the petition, shows that no cause of action is stated. Whatever may be the doctrine elsewhere, in this State a demurrer strikes squarely at the face of the petition and nowhere else. Mere exhibits, under our practice, constitute no part of the petition for the purposes of a demurrer. This has been held early and late. [6 Ency. Pl. and Pr., 298-299; Hadwin v. Home Mut. Ins. Co., 13 Mo. 473; Curry v. Lackey, 35 Mo. 389; Hoyt v. Oliver, 59 Mo. 188; Hickory County v. Fugate, 143 Mo. 71; State ex rel. v. Crumb, 157 Mo. l. c. 561; Pomeroy v. Fullerton, 113 Mo. l. c. 453.]

(d) Finally, we are confronted with the suggestion that the demurrer was well enough because on its face the answer shows that the pleaded matter constituting the equitable defense, insofar as it serves as a cross petition upon which affirmative equitable relief is predicated, is barred by the Statute of Limitations and, consequently, is dead for the purposes of affirmative relief. But this view of it overlooks the fact that if the demurrer were held well taken, then the whole equitable defense would be struck down for every purpose whether as a mere bar or as a cross action. [Sebree v. Patterson, 92 Mo. 451.]

Not only so, but the demurrer was bad from the viewpoint of a challenge at law to the answer as a cross action. A defendant long in peaceable and adverse possession, buttressed by an equitable title, among the traditional nine points in his favor, is within the protection of, but not within the mischief struck at by, the Statute of Limitations. Such equitable owner, so disturbed and vexed in his peace and property rights by an attack on his ownership and possession, may summon to his aid very ancient matter of defense—matter growing stronger instead of staler by the mere flux of time—and when he has so summoned it to his aid he may use it by way of counterstroke to make his title impregnable for all time, as well as to parry the attack itself. So runs the law. [Michel v. Tinsley, 69 Mo. 442; Epperson v. Epperson, 161 Mo. 577; Butler v. Carpenter, 163 Mo. 597; Williamson v. Brown, 195 Mo. l. c. 329.]

The premises all considered, the facts on which the decree was based being conclusively presumed true on this appeal, under the omission of the evidence in the bill of exceptions, and the answer showing facts of the most persuasive and convincing character appealing for relief, we conclude the chancellor dealt out righteousness in his decree. Let it be affirmed. It is so ordered. All concur.