CATHERINE H. PENDLETON et al. v. JOSEPH H. HUBBARD et al., Appellants.

Division One, November 30, 1910.

1. CAUSE OF ACTION: Held on Former Appeal to be Good Equitable Defense. Where it was held on a former appeal that the facts pleaded constituted a good equitable defense to an ejectment suit it will be held that the petition in a subsequent suit to quiet title, which sets up the same facts, states a cause of action.

2. TRIAL BY JURY: Quieting Title. If on a former appeal it was held that the matters pleaded by defendants were of equitable cognizance, and in their subsequent suit to quiet title the defendants in that as plaintiffs in this set up the same facts as constituting their cause of action, it will be held that defendants in this were not entitled to a trial by jury.

3. DECREE: Quieting Title: No Bill of Exceptions: Finding of Facts. Where there is no bill of exceptions it will be presumed on appeal that there was evidence upon which to base each finding of fact in the chancellor's decree for plaintiffs.

4. ———: ———: **Harassing Suits: Clouding Title.** Where the petition avers that plaintiffs and their grantees are being continually harassed by suits based on a stale title and that defendants are constantly making and putting of record deeds and contracts affecting and clouding the title, and the court finds in a suit to quiet title, that the defendants have no title, a decree, comporting with the petition, and decreeing that all interest and title conveyed by the instruments under which defendants' claim have long since vested in plaintiffs or their grantors, does not go beyond the statute, but is proper.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis*, Judge.

Affirmed.

*Geo. H. English* and *M. D. Trefren* for appellants.

The petition does not state facts to constitute a cause of action. The court erred in refusing a jury trial. The decree is beyond the issues joined in the pleadings and is not justified by the facts set forth in the petition, answer and reply, and goes beyond the statute under which the suit is brought. Burk v. Pence, 206 Mo. 315. If it is claimed that this is a suit under section 650, the plaintiffs must state how they acquired their title and it must be sufficient title. Burk v. Pence, 206 Mo. 115; Summit v. Realty Co., 208 Mo. 514.

*L. H. Waters* and *Cook & Gossett* for respondents.

(1) A possessory title is a positive and aggressive title, upon which affirmative relief can be prayed and obtained in a suit to quiet title or other suit. Hubbard v. Slavens, 218 Mo. 619; McRee v. Gardner, 131 Mo. 599. (2) The court did not err in refusing a jury trial. The allegations of the petition are sufficient after pleading and judgment at least to constitute a good cause of action either as a bill to quiet title or as a petition to have the title adjudicated, determined and es-

tablished under Sec. 650, R. S. 1899. As a bill to quiet title, clearly the defendants were not entitled to jury trial. As a petition under Sec. 650, the defendants, not being in possession, were not entitled to a jury trial. Hubbard v. Slavens, 218 Mo. 618; Stone v. Perkins, 217 Mo. 601. (3) The record shows no exception by the defendants to the action of the court in overruling their motion for trial by jury. That motion is not a part of the record and the overruling of it without exception cannot be assigned as error. Hubbard v. Gates, 129 S. W. 1.

GRAVES, J.—This case is here upon the record proper. As to the title to the lands involved it deals with facts and records perfectly familiar to this court. [Hubbard v. Slavens, 218 Mo. 598.] Plaintiffs are the widow and heirs-at-law of William K. Pendleton, and Dwight L. Pendleton, besides suing as an heir, further sues as a trustee under his father's will. It is alleged that by reason of the will the legal title is vested in the trustee. By the petition it is charged that William K. Pendleton in his lifetime was seized of an indefeasible estate in fee to a certain fifty acres of land, now a part of Kansas City, Missouri, describing the same. That during his lifetime the said William K. Pendleton sold off portions of this tract and gave warranty deeds thereto. That since his death his trustee, Dwight L., has conveyed other portions and given warranty deeds thereto, a part yet remaining unconveyed. The petition is one which seeks to quiet title to the whole fifty acres and at great length recites in detail all of the alleged facts. It recites each and every conveyance from the deed by which Chester Hubbard acquired title. Joseph R. Hubbard and Ellen L. Jeffries are alleged to be the only heirs-at-law of Chester Hubbard, deceased. The prayer of the petition in a way is a resume of many of the pleaded facts, and reads:

"Wherefore plaintiffs, on behalf of themselves and of all persons similarly situated, and of all persons claiming by, through or under William K. Pendleton, deceased, or by, through and under D. L. Pendleton, as trustee of the estate of William K. Pendleton, deceased, pray the court:

"(a). To order and adjudge the power of attorney executed by Chester Hubbard and Mary R. Hubbard, his wife, to John W. Summers, on September 16, 1856, and recorded in the office of the recorder of deeds of Jackson county, Missouri, on October 16, 1856, in Book Z at page 133, was a good and sufficient instrument authorizing John W. Summers to convey any and all property belonging to Chester Hubbard, including the lands hereinbefore specifically described as belonging to William K. Pendleton in his lifetime.

"(b).   To order and adjudge that by reason of the mortgage and conveyance dated March 12, 1857, filed for record March 14, 1857, and recorded in the office of the recorder of deeds of Jackson county, Missouri, in Book Z at page 476, and again filed on March 7, 1859, in Book 30 at page 594, all of the right, title and interest of Chester Hubbard, if any, in and to the land hereinbefore specifically described as belonging to William K. Pendleton in his lifetime, vested in Joseph C. Ranson, and thereafter by mesne conveyances passed from Joseph C. Ranson to William K. Pendleton and to those claiming by, through and under him.

"(c).   That by the warranty deed dated September 22, 1857, and filed for record in the office of the recorder of deeds in Jackson county, Missouri, on October 5, 1857, and recorded in Book 25 at page 500, all of the right, title and interest of Chester Hubbard in and to the land hereinbefore described as belonging to William K. Pendleton in his lifetime, vested in Hezekiah H. King, and that by mesne conveyances such title has passed to and vested in William K. Pendleton and those claiming by, through and under him.

"(d). That by reason of all the matters, facts and circumstances set up and alleged in the foregoing bill of complaint, Chester Hubbard and the defendants' claiming by, through and under him, be decreed and adjudged to be estopped and forever barred from setting up or claiming any right, title or interest in and to any portion of the property hereinbefore specifically described as belonging to William K. Pendleton in his lifetime, and that they may be restrained and enjoined from so doing.

"(e).   Plaintiffs further pray that the title of themselves and of those claiming under William K. Pendleton as aforesaid, and under D. L. Pendleton as aforesaid, be decreed, established and adjudged to be the absolute and fee-simple title in and to said lands and every part thereof as against defendants and all persons claiming by, through or under them, and that the same be forever quieted.

"(f).   Plaintiffs pray that it be decreed by the court that, under and by virtue of the deed made in November, 1876, or November, 1877, as the case may be, by Mary R. Hubbard to the defendants herein, whatever interest Mary R. Hubbard may have had as a life tenant merged and vested in whatever right, title or interest the defendants may have had by way of remainder, and that by reason of this fact the Statute of Limitations in any event began to run either in 1876 or 1877, and that defendants have no right, title or interest in and to the property hereinbefore described as belonging to William K. Pendleton in his lifetime, including the property belonging to the plaintiffs.

"And plaintiffs further pray for such other and further relief as to the court may seem just and proper, and for costs."

The facts pleaded in this petition cover all the facts pleaded in the equitable answer in the case of Hubbard v. Slavens, supra, and even more. A repeti-

tion of them here can thus be avoided by a reference to that case.

In addition to the facts pleaded in the equitable answer in the Slavens case, the present petition avers that the defendants are and have been constantly making and spreading of record deeds and contracts affecting the title to this tract of land. That suits were being continuously filed and a *lis pendens* filed in each of them. That the title of the plaintiffs and the grantees of William K. Pendleton and D. L. Pendleton, trustee, were thus being clouded. The prayer is as above set out. The petition is very voluminous, but by referring to the Hubbard-Slavens case, supra, its import can be fully gathered.

The answer was (1) a general denial, (2) express admissions as to many things pleaded, and an express denial of others. The answer, like the petition, is long, but the character thereof is as above indicated.

The reply was a general denial.

The judgment accords with the prayer of the plaintiffs' petition, and defendants feeling themselves aggrieved thereby have appealed. For the points actually involved this sufficiently states the case.

I. The first assignment of error is that the petition does not state a cause of action. In Hubbard v. Slavens, 218 Mo. l. c. 617-621, we discussed the facts pleaded by way of an equitable answer, and held that the facts pleaded constituted a good equitable defense in an ejectment suit. Not only so but we sustained a judgment which decreed title in the defendant. The petition in the case at bar is stronger in its allegations of facts than the answer in the Slavens case. That it stated a cause of action is fully settled by our ruling in the Slavens case, supra. This contention is therefore ruled against the defendants.

II. In the second place it is urged that the trial court erred in refusing to the defendants a trial by a

jury. There is no bill of exceptions in the case. It is as stated in the statement purely one of the record proper. The record proper, as abstracted, does show that a motion for a trial by a jury was made and over-ruled. If this question is a matter of exception of course it is not here, because there is no bill of exceptions. But we need not stop to discuss this theory. In the Slavens case, supra, we held that the matters pleaded were subjects of equitable cognizance. [218 Mo. l. c. 617.] This is sufficient here. Upon the strength of our ruling in the Slavens case this claim of defendants is disallowed.

III. The third and last assignment of error contained in the brief thus reads: "Third, that the decree is beyond the issues joined in the pleadings and is not justified by the facts set forth in the petition, answer and reply, that this decree goes beyond the statute under which the suit is brought and may be taken advantage of by appeal."

There is nothing in this point. The decree comports with the pleadings. It is fully authorized by the scope of the petition. There being no bill of exceptions presented, it is to be presumed that the trial court had evidence upon which to base each finding in the decree. If defendants had merit in their case, they should have presented the facts. Instead, they have chosen to rely upon antiquated ideas of pleading. When we said, as we did in the Slavens case, that the facts pleaded were cognizable in equity, there was nothing left to the appeal in this case. The facts pleaded, and presumably proven, would tend to show that a great number of the subsequent grantees of Pendleton, and the Pendletons themselves, were being continually harassed on defendant's alleged claim of a stale title. This, too, when it was disclosed as in the Slavens case that defendants' ancestor and his administrator had received the price of this land nearly a

half century ago. The decree *nisi* puts a quietus upon the inequitable conduct of defendants. It is right, in good conscience, and had it occurred sooner innocent parties might have been more fully protected.

Let the judgment be affirmed. All concur.