Nave v. Smith.

NAVE v. SMITH, *Appellant.*

1. **Parol Partition :** EQUITABLE TITLE. A parol partition of land followed by possession will be sufficient to sever the possession; the equitable title only, however, will pass, which by adverse possession may become the legal title.

2. ———: ———. A party in possession under a parol partition has the right to defend the possession, to control the legal title, and compel its transfer to him.

3. **Parol Partition, Revocation of.** The execution by a tenant, with the consent of his co-tenant, of a mortgage on the undivided one-half of the land held to operate, as to the mortgagee, as a revocation of the parol partition.

4. ———: ATTACHING CREDITORS : ESTOPPEL. Where attaching creditors of a co-tenant disregard a parol partition, and proceed against, sell, and buy the land, as the undivided interest of one of the co-tenants, and treat the person holding under the other co-tenant as the owner of an undivided half of the land, by calling on him to pay one-half of the taxes, which the co-tenant paid, they will be estopped to affirm the validity of the parol partition.

5. **Statute of Limitations.** The statute of limitations is not a defence where there is no adverse possession.

*Appeal from Livingston Circuit Court.*—HON. J. M. DAVIS, Judge.

Nave v. Smith.

AFFIRMED.

*C. T. Garner*, *Sr.*, and *J. R. Hamilton* for appellant.

(1) The law is well settled that a parol partition of lands by tenants in common, followed by exclusive, notorious, and adverse possession, is valid and binding between the parties, and title thus acquired is a legal and valid title. *Hazen v. Barnett*, 50 Mo. 507; *Bonapart v. Roderman*, 24 Mo. 401; 43 N. Y. 546; 36 N. Y. 499; 21 Mo. 331; 20 Mo. 81; 25 Mo. 63; 28 Mo. 13, 164; *Charpiot v. Sigerson*, 63 Mo. 60; 54 Mo. 261; 4 Johns. 202; 7 Johns. 276; 3 Pick. 399; 54 N. Y. 639; 3 Mo. App. 561. (2) Neither Kerr nor Breckenridge could have maintained an action of ejectment against the other for the respective portions of the lands assigned and allotted to the other, or have recovered the same. They occupied the same relative position towards the other, in respect to said lands, they would have occupied had they purchased the lands from each other, paid the purchase price and been put in possession. *Douthet v. Stenson*, 73 Mo. 200; *Baker v. Cude*, 60 Mo. 264. (3) The statute of limitations is a valid and legal bar against plaintiff's recovery. The defendant and those under whom he claims have been in the notorious, continuous, and adverse possession of the real estate in controversy under a claim of title for more than ten years prior to the commencement of this suit. 43 Mo. 142; *Draper v. Shoat*, 25 Mo. 197; *Bradley v. West*, 60 Mo. 40; 52 Mo. 108; *Hughes v. Israel*, 73 Mo. 547.

*Ramey & Brown* for respondent.

(1) The presumption of law is that the possession of one tenant in common is the possession of his

co-tenants. *Lapeyre v. Paul*, 47 Mo. 586; *Musick v. Barney*, 49 Mo. 458; *Nave v. Todd*, 83 Mo. 601. (2) It is a well-settled rule in this state that the several interest created by a parol partition is a purely equitable one. *Hazen v. Barnett*, 50 Mo. 506. (3) The attaching creditors and their trustee made their election to stand by the legal title and acquiesce in the rescission of Breckenridge and Kerr, the moment they called upon Nave to pay his share of the taxes, and they re-affirmed such election by buying Breckenridge's title to the whole tract, and again by otherwise recognizing Nave as their co-tenant. (4) The defendants are estopped from setting up any equities Breckenridge might have had under the parol partition. *Austin v. Loring*, 63 Mo. 19. (5) Defendants ought not to have relief in this case, because they have been guilty of laches so gross as to closely resemble fraud. It was the duty of the attaching creditors of Breckenridge, immediately upon being notified of the rescission of the contract of partition by Kerr, and the claim of Nave thereunder, to repudiate it, and if they do not do so they will be considered to have acquiesced in the rescission. And this result will follow in one or two years. *Banks v. Burnam*, 61 Mo. 76. "A court of equity does not lend a helping hand but to the prompt and vigilant." *State v. West*, 68 Mo. 229. (6) There is no evidence upon which the court would be authorized to find that there was a parol partition of these lands. The evidence must rebut the presumption arising from the deeds, and for that purpose must be clear and certain. *Johnson v. Quarles*, 46 Mo. 423; *Underwood v. Underwood*, 48 Mo. 527; Story's Eq. Jur., sec. 764.

BLACK, J.—The defendant appealed from a judgment in favor of the plaintiff in an action of ejectment for the undivided one-half of eighty-five acres of land in DeKalb county. While this case is, in many respects,

like that of *Nave v. Todd*, 83 Mo. 601, still there is some difference in the evidence, and this case is presented on a somewhat different theory, so that it will be considered on its own facts.

Prior to 1859, Henry C. Kerr and John C. Breckenridge owned two farms in DeKalb county, as tenants in common, and they were also the joint owners of certain personal property. The defendant's evidence shows that, in February of that year, Kerr and Breckenridge divided their personal property, and also made a parol division of the land. The land was surveyed, and Kerr took four hundred and forty acres, being the improved portion of what is called the Canfield farm, and upon which he then and previously resided. Breckenridge took the residue of the Canfield farm and what is called the Breckenridge home-farm, and upon which he resided. Kerr resided upon his portion until 1861, and it was in the possession of his tenant from that date to 1865, or 1866, while he was in the army. Breckenridge, by himself or tenants, occupied his portion until 1868. No deeds were made in 1859, and from the records of the county they appeared to be tenants in common, each owning the undivided half of the two farms. On the fifth of March, 1866, they executed and recorded a partition deed in conformity to the previous parol division.

Previous to this last-named date, and on the nineteenth of February, 1861, various creditors of Breckenridge attached his interest in both farms. On the twenty-fifth of the same month, Kerr made a mortgage to Nave, the present plaintiff, upon the undivided one-half of the Breckenridge farm to secure his note of that date to Nave for about nineteen hundred dollars, due in sixty days. This mortgage was made with the knowledge and at the request of Breckenridge. This note was given in lieu of one held by Nave against Breckenridge then past due. There is evidence to the effect

that Kerr was also bound on the old note. The attaching creditors prosecuted their suits to judgments, and the interest of Breckenridge in both farms was sold thereunder and purchased by Saunders, who took the title in trust for the attaching creditors, the sheriff's deed to him being dated in 1868, the date of the sale. Nave foreclosed his mortgage on the undivided half of the Breckenridge farm, and became the purchaser of that interest at a sale under his judgment in 1865, and this is his title.

There was a subsequent suit between the attaching creditors and Saunders, which resulted in a decree for the sale of all the property purchased by Saunders; and, at a sale under that decree, the defendant in this suit purchased the property in question and other property, and received a sheriff's deed, dated seventh of October, 1875. The evidence shows that Saunders had possession of all of the property from 1868 to 1875, that he acted as the agent for the creditors of Breckenridge and also for Nave. Nave, through Saunders, paid his share of the taxes on the Breckenridge farm for several years. The land was sold for delinquent taxes for 1861, 1863, and 1864, and by Saunders purchased in the names of Nave and King, the latter being one of the attaching creditors. The other facts deemed material will be noticed hereafter.

Defendant's position is, that, by reason of a parol partition between Kerr and Breckenridge, in 1859, the latter acquired the legal, as well as the equitable, title to the land in suit, and that this title passed to him. It is certainly the law of this state, that a parol partition between tenants in common, followed by possession, will be sufficient to sever the possession. *Bompart v. Roderman*, 24 Mo. 398. But in the subsequent case of *Hazen v. Barnett*, 50 Mo. 506, it was held that, while a parol partition followed by possession was good as between the parties, yet the equitable title only passed,

which by adverse possession may ripen into a legal title. It was also held that a party to such parol partition has the right to have the same confirmed by a decree, vesting in him the legal title. There is a diversity of opinion in the books upon the subject as to whether the legal or simply the equitable title passes in such cases. It is certainly the policy of our statute that titles to real estate be made matter of record. Under the doctrine of the case last cited, the party taking possession of the part allotted to him will be able to defend his possession, control the legal title, and compel its transfer to him. We shall not depart from the rule of that case as applied to like cases. The rights of Kerr and Breckenridge arising from the parol partition must be treated as equitable, not legal.

The evidence produced by the defendant shows a parol partition between Kerr and Breckenridge in 1859, followed by possession, or rather each continued in the possession of the part allotted to him. But it also appears that on the fifteenth of February, 1861, Breckenridge conveyed the undivided half of the Breckenridge farm to Andy and Adam A. Breckenridge. We infer this deed was made as a security for certain debts, but it recites that Kerr is the owner of the other undivided half, thus showing that, at that time, he disregarded the parol partition. On the twenty-fifth of the same month, Kerr made the mortgage to Nave on the undivided one-half of the same land, and this mortgage was made at the request of Breckenridge. As between Nave, on the one hand, and Kerr and Breckenridge, on the other, the latter could not successfully set up a parol partition, for if there had been one, the execution of the mortgage by Kerr, with the consent of Breckenridge, would operate as a revocation of it. Under such circumstances, Breckenridge could not, as against Nave, claim with success the whole of the Breckenridge farm. The recital in the

deed to Andy, and the mortgage to Nave, are inconsistent with full ownership of the Breckenridge farm by Breckenridge.

But it is urged that whatever interest Breckenridge had, whether legal or equitable, became subject to the attachments, and as they were levied on the nineteenth of February, 1861, the rights of the attaching creditors could not be affected by the Nave mortgage, made on the twenty-fifth of the same month. In other words, the subsequent acts of Kerr and Breckenridge and Nave could not prejudice the rights of the attaching creditors. All this would be true but for the course pursued by the attaching creditors. They, too, disregarded the alleged parol partition, for they prosecuted their suits from 1861 to 1868 against the interest of Breckenridge in both farms, and purchased that interest in the name of Saunders, and the suit between them and Saunders proceeds upon the theory that they had acquired an interest in both farms. Not only this, but Saunders treated Nave as the owner of the undivided half of the Breckenridge farm by calling upon him for one-half of the taxes, which Nave paid, believing he had acquired the one-half interest. Kerr says he told Nave about the parol partition when the mortgage was made, but Nave says he had no knowledge that a partition had been made, and we conclude proof of notice to him of such a partition is not made out. We do not say that the want of notice of itself on the part of Nave would defeat the attachments on the equitable interest of Breckenridge. Whatever there was of this parol partition was known to some of the attaching creditors. Their continued claim to an interest in the Kerr farm was a denial of a parol partition.

It is plain to be seen that Kerr and Breckenridge, in making the mortgage to Nave, acted upon the title as it appeared of record; that Nave has always claimed title according to the recorded deeds, and that the attaching creditors, through a series of years from 1861

to 1875, have disclaimed any binding parol partition by claiming the undivided one-half of both farms. It is now too late for them, or those claiming under them, to turn around and say they got no interest in the Kerr farm, but got the whole of the Breckenridge farm. They cannot, at this late day, make their election to affirm the parol partition, and thereby defeat the plaintiff's mortgage. We are constrained to say there is no equity in the defence.

As to the statute of limitations it is sufficient to say there is no evidence in the case upon which to base such a defence. Saunders was in possession from 1868 to 1875, and he recognized and treated Nave as a co-tenant, so that there was no adverse possession then. This suit was commenced in 1879. The judgment in this case was entered up for the whole of the described land, whereas it should have been for the undivided one-half only. The plaintiff offers to remit one-half of the damages recovered, and the undivided one-half of the land.

The *remittitur* will be allowed and the judgment for the undivided half of the land and one-half of the damages recovered affirmed, but the costs of this appeal must be taxed to the plaintiff. Ray, J., absent; the other judges concur.