O. E. Clark, Appellant, v. U. S. Clark et al.; Cora C. Dent, Respondent.—4 S. W. (2d) 807.

Division Two, March 24, 1928.

592

*E. W. Bennett* for appellant.

*Wm. P. Elmer* and *Frank H. Farris* for respondent.

WALKER, J.—This is a suit to partition an improved town lot in Salem, Dent County. Upon a trial there was a judgment for Cora C. Dent, from which O. E. Clark has appealed.

The title to the property sought to be partitioned was in Laura A. Clark and had been since 1901, when it was bought by her husband, Hamlet Clark, who directed that the deed to the same be made to her, which was done. From that time until the death of the husband in 1903, he and she occupied the property as a home. After his death she continued in the possession of the same, exercising all of the attributes of ownership until she died intestate in 1923, leaving as her heirs three sons, O. E. Clark, the plaintiff and appellant, U. S. Clark and F. L. Clark, and a daughter, Cora, one of the defendants and the respondent herein, intermarried with one E. F. Dent. F. L. Clark died a few weeks after his mother, leaving a widow and five children.

Hamlet Clark owned eighteen hundred acres of land. On one of these tracts he made his home. About two years before the purchase of the town lot he decided to divide one thousand acres of his land among his four children. With the aid of a surveyor this was done and the particular tract given to each child was designated by its Governmental description and each was put in possession of their respective portions. It was evidently in anticipation of these donations that the town property was bought by him and the deed thereto made to his wife. In March, 1903, or about four years after he had subdivided and allotted a portion of his land to his children, he made a will devising all of his land, consisting of about eighteen hundred acres, to his four children in accordance with the gifts of the same theretofore made by him to them, and also his land which had not been allotted. In addition to these devises the will provides that:

"Seventh: It is my will, wish and desire that Cora C. Dent after my death and the death of my wife, have and hold the house in Salem in which I now reside, being located in Section 13, Township 34, N., Range 6, West."

Upon the death of Laura A. Clark, Cora C. Dent took possession of the property in question and has since occupied it. She has subsequently, so to speak, buttressed her claim of title by procuring conveyances to her of the respective interests in the property of her brother, U. S. Clark, and Alice Clark, the widow of her deceased brother F. L. Clark and three of the latter's children who have reached their majorities. This leaves as the present defendants, Cora C. Dent, and Pauline and Katherine Clark, the two minor children of F. L. Clark, deceased. It is the contention of the plaintiff, O. E. Clark, that the will of the father, Hamlet Clark, did not effect a devise of the property to Cora C. Dent, but that his mother,

Laura A. Clark, died seized and possessed of the same and that he is entitled to a one-fourth interest in it as one of her heirs at law. This is the gist of his petition, which in other respects conforms to the conventional requirements of a pleading of this character.

Cora C. Dent avers in the first count of her answer, and so contends in her testimony, that the clause in her father's will, above quoted, devised the property to her. Much matter by way of inducement is pleaded in connection with this averment, which so far as relevant will be discussed later. She further contends, despite the fact that the property at the time of its purchase was, under the direction of her father, made to her mother, that the father intended to retain the title in himself and that due to ill health and a bad memory he overlooked the fact that he had taken the title in the name of his wife; that the father gave greater and more valuable portions of his land to her brothers than to the respondent, Cora C. Dent; and that all of the heirs, except the plaintiff, accepted the provision of the will upon the assumption that the property in controversy was owned by their father, Hamlet Clark, and that it was devised by him, in the clause of his will above quoted, to Cora C. Dent.

In the second count of her answer she avers that the apportionment or setting apart of a portion of his land to his heirs by her father constituted a parol partition of the same. Her contention in this regard, as expressed by her counsel, is to the effect that her father's act constituted such a partition and that under the clause of the will a trust estate in the property in question was created in her and that the other heirs were equitably estopped from claiming an interest in the same.

The answer of the minor defendants by their guardian *ad litem* was in the customary form and required proof of the averments of the petition and answer.

The testimony concerning the division of his land by Hamlet Clark, so far as the same can be considered relevant, may be thus summarized: Hamlet Clark determined to divide one thousand acres of his land equally among his four children—not according to acres but values—and thereafter to remove to Salem to spend his declining years. A meeting of the heirs and their father was held at the home of the latter in the country, two years before the property in controversy was purchased and three or four years before the father and mother moved to Salem. The land he had determined to subdivide and allot was generally designated as the "Copeland Tract" and consisted of about one thousand acres. Aside from the determination of the father that each child was to receive one-fourth in value of the land, the apportionment of the same as to tracts was left to them. They decided that the eldest brother, U. S. Clark, should first designate his choice, which he did, and that their sister, Cora C.

596

Dent, should have the next choice, which she exercised. This left a portion of the land in one body which the two other brothers, Fred L. and O. E. Clark, chose to take jointly as their shares. No formal transfer of this land was made, but each child took possession of the tract chosen, when the apportionment was made by the father, and remained in possession thereafter. Later, when the father and mother were living in Salem, he made a will in which he devised his land to his four heirs according to their former designations of their respective shares in the same. He also devised his unallotted land concerning which there is no controversy.

F. L. Clark, deceased, and O. E. Clark, the plaintiff, were present when the will was made. The latter testified that "father had made up his mind and he indicated how he was going to will his property and there wasn't much said. Some mention was made about the property in town, and Mr. McDonald, the man that wrote the will, said, 'You can't will that, that belongs to your wife.' 'Well' father said, 'she can dispose of it the way she wishes.' I knew at the time the town property was bought that it was put in mother's name. Father said he put it in her name so she couldn't be beaten out of it."

I. It may be conceded that a parol partition made in good faith, is valid and binding upon all who take part in it  and vests the equitable title to the land involved in the respective partitioners, who can defend the possession, control the legal title and compel transfers. The difficulty here in the application of the rule is that if it be conceded that a parol partition was effected in the subdivision and the allotment of a part of Hamlet Clark's land, the property in question was not included in it and cannot therefore be considered in determining what interest if any the respondent possessed therein. Hamlet Clark, at the time, did not own the property in question and it was not bought by him until two or three years after the subdivision. It is at least persuasive evidence that none of the parties to this transaction had or could have had in contemplation anything more than the land divided. Hamlet Clark proposed the donations and subdivisions and defined the portion of his holdings to be subdivided, leaving to the children the right to decide among themselves as to the manner of the allotments. The children agreed, not grudgingly, as to the part each was to take. The respondent was moved at the time by no other motive, so far as the record shows, than gratitude, which implies satisfaction and in that spirit she made her choice. If she had misgivings like Maria Theresa, at the first partition of Poland, she nevertheless "took her part." To contend, under these facts, that any semblance of title was conferred or by implica-

tion can be held to have been created, in her to the property in question, to which her father then had no title, passeth understanding. The contention, therefore, that an equitable interest was created in the respondent in and by reason of the subdivision and donation of the father of a part of his lands may be dismissed from consideration.

II. Stripped of that ancillary prop upon which to lean a claim to title we come to consider the contention whether the seventh clause of Hamlet Clark's will is sufficient in its terms to invest the respondent with title and defeat the partition of the property. Hamlet Clark had no title to the property. When he bought and paid for it he had it conveyed to his wife absolutely and unequivocally and her investiture of title therein became complete and was never questioned by him unless the seventh clause of his will can be so construed. It is true that precatory or beseeching words, such as are employed in the seventh clause, may be construed to be testamentary, where they point out with clearness and certainty the subject-matter of the trust (Noe v. Kern, 93 Mo. 367); but this rule has no application when the testator has no title to the property sought to be affected by the words employed. No precedent is necessary, although we so held in Bushman v. Barlow, 292 S. W. l. c. 1050, that to sustain the act the absolute ownership is necessary to authorize a testamentary disposition of property.

Thus much for the application of the rule concerning the precatory words in the will. In the application of the rule, therefore, it is necessary that the testator be invested with the title to the property attempted to be devised by the words employed. When Hamlet Clark bought the town property, paid for it and had the deed made to his wife the presumption is that he intended it as a provision for her and in the absence of proof showing a different intention *at the time,* and not three years thereafter when the will was made, no trust can result in his favor sufficient to authorize him to make a testamentary disposition of the property. [Costello v. Brune, 272 S. W. (Mo. App.) l. c. 1057; Wimbush v. Danford, 292 Mo. 588. 238 S. W. 460; Wilhite v. Wilhite, 284 Mo. 387, 224 S. W. 448; Curd v. Brown, 148 Mo. 82, 49 S. W. 990.]

The presumption above indicated obtains when the purchase price of the property is paid by the husband for the wife. [Conqueror Tr. Co. v. Craig, 204 Mo. App. 650, 218 S. W. 972.] Numerous other decisions in our own courts cited by the appellant give force to the presumption that when Hamlet Clark caused the property to be conveyed to his wife he intended it as a settlement or provision for her and that no trust in him will result therefrom.

No trust having been created in him he could not have prevailed in an action to set aside the deed made to his wife and the respondent can occupy no better ground of vantage than the testator.

In Case v. Espenschied, 169 Mo. 215, 69 S. W. 276, the court said: "The law is settled in this State that when a husband buys land with his own money, and puts the title in his wife *without expressly reserving, in the deed, an interest in himself,* the law will presume that he intended it as a provision for his wife, and he will not be deemed to have a resulting trust therein because he furnished the money."

The affirmative character of the rule, as above stated, is further exemplified in the following cases: A resulting trust, such as would be necessary to sustain the contention of the respondent, must arise, if at all, at the instant the deed is taken; unless the transaction is such that at the moment the title passes the trust results from the transaction then it does not result and it cannot be created by subsequent occurrences. [Barrett v. Foote, 187 S. W. (Mo.) l. c. 69; Stevenson v. Haynes, 220 Mo. l. c. 206, 119 S. W. 346; Robinson v. Champion, 143 Mo. l. c. 544, 45 S. W. 280.] A trust results from operation of law from the facts in the case and never by operation of any agreement, but from what the parties do and not what they agree to do. [Bender v. Bender, 281 Mo. 473, 220 S. W. l. c. 930.]

Viewed in the light of these cases much of the testimony introduced on behalf of the respondent was inadmissible. The testator had no title to the property. When he directed the making of the deed to his wife he inserted no reservation therein indicative of the creation of a trust. In the absence of these essentials his reputed declarations or the expression of his wishes as to the disposition of the property after his wife's death, were immaterial as they possess no probative force to give a mandatory or testamentary character to the seventh clause of the will.

The testator's conversation with the scrivener when the latter drew his will, is strongly persuasive of the fact that he, himself, regarded the seventh clause of the will as nothing more than an expression of his desire. This, in effect, occurred: Something was said by the testator concerning the disposition of the property in question. In reply thereto the scrivener said: "You can't will that; it belongs to your wife." "Well" said the testator, "she can dispose of it the way she wishes to dispose of it." While a declaration of this nature cannot, under the rules stated, be determinative of title, the words used are at least indicative of the testator's intention.

Further indicia appear in the manner in which the testator declared his purpose in the different clauses of the will. In all except the seventh, the words of devise are "I give and bequeath, etc." In the seventh the words, "it is my will, wish and desire" are employed. The difference in these initiatory words would perhaps not be signif-

icant but for the conversation of the testator with the scrivener. Informed of his inability to devise and bequeath the property in question he properly limited the expression of his will in regard thereto to a wish or a desire.

For the reasons stated the trial court erred in holding that the seventh clause of the testator's will effected a devise of the property involved. Our ruling to the contrary renders unnecessary a consideration of the other errors assigned by the appellant. The judgment is therefore reversed and the cause remanded, the case to be proceeded with in a manner not inconsistent with our rulings herein. All concur.