WILLIE MYRTLE ROBERTS, Appellant, v. R. A. ADKINS and CHARLES HIGGINBOTHAM.—5 S. W. (2d) 70.

Division Two, April 9, 1928.

*Ward & Reeves* for appellant.

790

*John T. McKay* and *Langdon R. Jones* for respondent.

HENWOOD, C.—This suit, filed in the Circuit Court of Dunklin County on August 23, 1923, involves a controversy between the plaintiff, Willie Myrtle Roberts, and the defendant Adkins, over the title to forty acres of land, described as the Northwest Quarter of the Southwest Quarter of Section 23, Township 17, north, Range 8, east, in Dunklin County. The plaintiff claims an undivided one-half interest in this land, and her petition is in two counts: first, to determine title, and second, in ejectment. Adkins, in his answer, denies plaintiff's alleged interest in the land, asserts his ownership of the same, in fee simple, by virtue of the record title and adverse possession, and specially pleads estoppel and other equitable defenses. The reply admits certain relationships between parties to the record title, as pleaded in the answer of Adkins, and denies all of the other affirmative allegations therein contained. Higginbotham, being in possession of the land in question, as a tenant of Adkins, was joined as a defendant for that reason only. Under the pleadings, the case was converted from an action at law into an equity proceeding. The trial chancellor found against the plaintiff and in

favor of the defendants on all issues and rendered judgment accordingly. From that judgment, the plaintiff has perfected this appeal.

This forty acres of land was conveyed to Adkins by the warranty deed of John M. Cude and wife, dated December 15, 1896, and filed for record January 1, 1897, for a consideration of $825. (This assumes the right of Adkins to reformation of this deed, as to the land described,. which is now conceded.)

The record title of this land, as the same appears from the chain of conveyances offered and read in evidence, is as follows:

1. Patent from Dunklin County to John Cude, dated January 1, 1861, filed for record April 3, 1861.

2. Warranty deed from John Cude to John M. Cude and Horner Cude, dated August 1, 1868, filed for record September 21, 1877, consideration one dollar and love and affection.

3. Warranty deed from John M. Cude to John Cude, dated November 29, 1870, recorded on December 31, 1870, in Book C at page 429, and rerecorded on December 20, 1921, in book 77 at page 513,' consideration $150.

4. Warranty deed from John Cude and wife to Matilda A. Cude, dated March 7, 1873, recorded May 22, 1873, consideration one dollar and love and affection.

5. Quitclaim deed from Sarah E. Hodge and husband to William F. Shelton, dated October 4, 1881, duly filed for record, conveying an undivided one-half interest in the land.

6. Warranty deed from William F. Shelton to Hiram L. Prewett, dated March 4, 1885, duly recorded, conveying an undivided one-half interest in the land.

7. Warranty deed from Hiram L. Prewett to William F. Cude, dated March 4, 1885, duly recorded, and purporting to convey the whole title.

8. Warranty deed from W. F. Cude and wife to John M. Cude, dated May 21, 1887, duly recorded, conveying the forty acres in controversy, except ten acres in the southwest corner.

9. Warranty deed from Benjamin F. Ward and wife to John M. C. Cude, dated December 26, 1888, duly recorded, conveying the southwest quarter of the northwest quarter of the southwest quarter of Section 23.

10. Warranty deed from M. J. Gregory (nee Prewett) and her husband, to William R. Hall, dated June 8, 1899, duly recorded, conveying an undivided one-half interest in the land.

11. Quitclaim deed from W. R. Hall and wife to H. L. Prewett, dated December 2, 1899, duly recorded, conveying the undivided interest of the grantors in said land. It is conceded that John Cude (grantee in item 1 of the record title) is the common source of title.

It is further conceded, so far as this case is concerned, that Adkins is the owner of an undivided one-half interest in this land. It must, therefore, be taken as conceded that Adkins has acquired by mesne conveyances, adverse possession or otherwise, the interest of Horner Cude, son of John Cude (and one of the grantees in item 2 of the record title), and the interest of M. J. Gregory (*nee* Prewett), daughter of Matilda A. Cude and granddaughter of John Cude (and grantor under item 10 of the record title). With the issues thus narrowed, there is left for our consideration, first, the question of whether the plaintiff, as the daughter and only other child and heir of Matilda A. Cude (grantee in item 4 of the record title), was entitled, upon the death of Matilda A. Cude in 1884, to an undivided one-half or an undivided one-fourth interest in this land, subject to the curtesy or life estate of Hiram L. Prewett, her father, and the husband of Matilda A. Cude (and grantee in item 6 and grantor in item 7 of the record title); and second, the question of whether or not the plaintiff, by reason of the course pursued by her in the division of her father's (Hiram L. Prewett's) estate, is now estopped from asserting any interest in this land.

The plaintiff's claim of an undivided one-half interest rests on the contention that the conveyance from John Cude to Matilda A. Cude in 1873 and recorded the same year (item 4 of the record title) took precedence over the conveyance of John Cude to John M. Cude and Horner, his sons, in 1868, but not recorded until 1877 (item 2 of the record title), because of the prior recording of the conveyance to Matilda A. Cude. Adkins disputes the merit of this contention on the ground that the conveyance to Matilda A. Cude was made without a valuable consideration and, therefore, falls within the bounds of one of the exceptions to the general rule relating to priority in the recording of conveyances of real estate. The plaintiff's claim of an undivided one-fourth interest is based on the contention that, even though the conveyance from John Cude to John M. Cude and Horner Cude is given precedence over the later conveyance from John Cude to Matilda A. Cude, Matilda A. Cude acquired a one-half interest by reason of the conveyance back to John Cude from John M. Cude in 1870 (item 3 of the record title), and she (the plaintiff) and her sister, M. J. Gregory (*nee* Prewett), as the only children and heirs of Matilda A. Cude, were each entitled to an undivided one-fourth interest, upon the death of Matilda A. Cude in 1884. As against this contention of the plaintiff, Adkins counters with the contention that, because the record of the conveyance from John M. Cude to John Cude was destroyed by fire in 1872 and that conveyance was not rerecorded until 1921, and because he was a purchaser of this land in 1896, for a valuable consideration and without

notice of that conveyance, the plaintiff is estopped from asserting any interest in the land, under that conveyance.

These and other contentions of counsel present some very interesting questions on the record title, but, due to the conclusion reached on the issue of estoppel, in connection with plaintiff's acts in the division of her father's estate, it becomes unnecessary to decide whether she acquired an undivided one-half interest, or an undivided one-fourth interest, or any interest, in this land, by inheritance from her mother, Matilda A. Cude.

Immediately following the purchase of this land by Adkins in 1896, he took possession of it, and has since cleared and fenced it, built a six room house on it, paid the taxes on it, and been in the actual, visible, exclusive, hostile and continuous possession of it.

Hiram L. Prewett died, intestate, September 9, 1921, leaving the plaintiff and M. J. Josslyn, formerly M. J. Gregory (*nee* Prewett), as the only children born of his marriage to Matilda A. Cude, and Bertha G. Dalton (*nee* Prewett), Stella S. Karnes (*nee* Prewett) and Sadie Prewett, as the only children born of his second marriage. On January 6, 1922, a partition suit was filed and later concluded by final judgment, in the Circuit Court of Dunklin County, in which the children of Hiram L. Prewett effected a division of certain lands belonging to his estate. The plaintiff in this case was a party plaintiff in the partition suit, and, by her petition and the judgment in that suit, she sought and obtained full allowance for her interest in certain lands which her grandfather, John Cude, had conveyed to her mother, Matilda A. Cude, and which her father, Hiram L. Prewett, had held or conveyed, or undertaken to convey, during the enjoyment of his curtesy or life estate. Both the petition and the decree in the partition suit recite that a part of the lands sought to be partitioned were lands which belonged to the plaintiff's mother, Matilda A. Cude, and that the plaintiff had never received any portion of the same. And it appears from the report of the commissioners and the order of the court approving the same, that, out of the lands so partitioned, a sufficient number of acres were set off to plaintiff to cover in full the interest claimed by her in her mother's lands, and that she shared equally with the other heirs in the division of the other lands, belonging to her father's estate.

At the time of her father's death and for many years prior thereto, the plaintiff lived in Tennessee. Her husband, W. D. Roberts, acted as her agent in the settlement of her father's estate and in the partition proceedings, making several trips to Dunklin County in connection therewith. The plaintiff testified that she was only two years old when her mother died and, while her father "always" told her he had some land that belonged to her mother, she never knew anything about the record title to it; that she didn't know anything

about the forty acres of land involved in this controversy at the time of the partition suit; and that her husband "got an abstract" at that time, but she didn't know "what it called for." Referring to the settlement of her father's estate, she further testified: "My husband, with Mr. McKay's help, acted as my agent in transacting this business relative to this estate. He talked it over with me and it was acceptable to me for him to come over and attend to my interests."

Mrs. Josslyn, plaintiff's sister, testified that she didn't understand that the Adkins land was involved in the partition suit; that, before her father died, she had sold her undivided one-half interest in her mother's lands, but didn't know it included the Adkins land; that she and the other heirs agreed on the division of lands to be made in the partition suit before the suit was filed, and that "there was nothing mentioned about this forty in question at all" until after the agreement was signed. In this connection, she said: "We wouldn't have knew nothing about Adkins forty till Mr. McKay sat there and told us after this was all signed up, we didn't know nothing about it. How this forty acres in question come up— these abstracts they got out to divide that home place showed this forty of Mr. Adkins', and of course, Mr. McKay said Mr. Adkins had no title to it."

Mr. John T. McKay, of counsel for the defendants, testified for the defendants at the trial of this case. Owing to the importance of his testimony, it will be quoted in full, as follows:

### "Direct Examination by Mr. Jones.

"My name is John T. McKay. I live at Kennett, Missouri, am an attorney at law, and have been practicing law in Dunklin County since 1897. I know the husband of Mrs. W. M. Roberts, the plaintiff in this case. I am the same attorney who represented the plaintiff and the other heirs of H. L. Pruitt in the partition suit relative to their father's estate. I was present at Senath in a conference with Mrs. Joslyn and W. G. Bray and W. D. Roberts and others, relative to this land in controversy and the partition of the estate of H. L. Pruitt; that occurred on December 23, 1921, and the partition suit was filed January 6, 1922. After we had reached an agreement and all agreed to the division of the land, then this forty acres in controversy was mentioned, and it was shown in the abstract to have been conveyed to Matilda A. Cude in that original deed, and there was not any conveyance at that time in the abstract which we had showing wherein she had conveyed it away; that was discussed just as Mrs. Joslyn says it was after this contract was closed up.

"Q. Now then, did Mr. Roberts there at that time in making this agreement, and his demand for his wife's interest in the Pruitt

estate, how much did he claim out of the estate before any division, and tell the court why he claimed it? A. Yes, sir, Mr. Roberts had in his possession a letter from Mr. Pruitt to Mrs. Roberts stating that his wife had received a conveyance from John M. Cude, her father, for 140 acres, that is what the letter stated, and he was insisting that Mrs. Roberts, his wife, was entitled to seventy acres by virtue of that conveyance; he had these abstracts made and we never could find but 120 acres, and this forty in controversy was one of them, so he insisted that he take his half of the 120 acres, the three forties we had found, and that that sixty acres must be set out first before any other division of the land, and that sixty acres was taken into consideration when the partition suit was consummated and was. set off first, and the twenty-eight acres out of her father's estate—

"(Witness continues): Eighty acres of the land mentioned in the conveyance from John Cude to Matilda A. Cude was in this partition suit, and the other forty was the forty Mr. Pruitt deeded, and Mr. Adkins holds, and is now in controversy.

"Q. Before the partition, state to the court if W. D. Roberts had full knowledge of this forty acres being mentioned in the deed from John Cude to Matilda A. Cude, and whether or not that was one of the reasons for demanding sixty acres from the estate of H. L. Pruitt? A. Yes, sir, he had full knowledge of it, and he and I discussed it shortly after the administration in 1921. I represented the administrator, and I examined the abstracts for Mr. Roberts then and he understood that that forty acres had been conveyed.

"Q. Did he take pay then in this partition suit from H. L. Pruitt's estate for what he alleged to be his wife's interest for the forty in controversy? A. He took pay for the 120 acres, and this is included in the only 120 acres we could ever find.

## "Cross-Examination by Mr. Reeves.

"I am one of the attorneys for the defendant in this case, and I represented the plaintiff and others in the partition suit. At the time I talked with Mr. Roberts at Senath I did not know at that time that John M. Cude had made a deed to John Cude; the first time I ever learned of that was when we got a new abstract. The abstract we had was certified to prior to 1921, and this other deed didn't appear of record, because it was first recorded before the burn-out. I didn't know about this particular deed. I did know this, that the administrator had some old deeds he had got from Mr. Pruitt, and through Mr. Roberts and my advice, he turned those over to Mr. Roberts.

"Q. Don't you know Mr. Roberts did not have this deed and had never seen it when you discussed the matter with him at Senath? A. On December 23rd, yes, sir, I think he had seen it; he didn't

have it with him, but I think he had seen it before that time. I told him at the time he could recover the interest, notwithstanding the partition suit, I thought he had a chance to recover it. I'll go further and say I've changed my mind since then. Since I've gone into it I have changed my mind; I'll further state that all of these facts were detailed to Mr. Adkins when he came to me to employ me. He was told about this contract and all.''

Plaintiff's husband, Mr. W. D. Roberts, attended the trial, but did not testify.

It was admitted by plaintiff's counsel at the trial that she still owns and claims as her own all of the lands set off to her in the partition suit.

After a careful review of the record, it seems perfectly clear that the plaintiff is estopped from asserting any right, title, interest or estate in the land in controversy.

Plaintiff's husband actively represented her, as her agent, in the partition proceedings and in the settlement of her father's estate. She admits that he "talked it over" with her. The petition and decree in the partition suit show that she asked for and received, out of her father's estate, a full accounting for her undivided one-half interest in her mother's lands, and that, in addition thereto, she shared equally with the other heirs in the remainder of her father's estate. Her attorney in the partition suit, Mr. McKay, testified positively that the land set off to her in the partition suit covered her claim of an undivided one-half interest in all of her mother's lands, including the Adkins land or the land now in controversy. He further testified that he discussed the matter with plaintiff's husband before the partition suit was filed, and that he (plaintiff's husband) insisted on this division of her father's estate, with "full knowledge" that, by this division, she (the plaintiff) was taking "pay" for her undivided one-half interest in the Adkins land. Mr. Roberts, plaintiff's husband, was in the court room and presumably heard McKay's testimony, but did not see fit to take the witness stand and deny any of McKay's statements. And it is conceded that the plaintiff still owns the land so received by her out of her father's estate and still enjoys the fruits thereof.

Assuming that the plaintiff, at the time of her father's death, was entitled to an undivided one-half interest in the land in controversy, which we do not decide, it plainly appears that she has been fully compensated for such an interest out of her father's estate. And it further appears that this was done at her instance and with full knowledge on her part. Having elected to so proceed, that is, to treat her father's conveyance of this land as a conversion of her interest in the same, and having received "pay" in full for her loss, she cannot now, in equity and good conscience, follow this land and

recover the same interest out of it also. No principle of our equity jurisprudence is better established than the one upon which this conclusion is based. [20 C. J. 12; Abbott v. City of Senath, 243 S. W. (Mo.) 641; Schneider v. Schneider, 224 S. W. (Mo.) 1; Hubbard v. Slavens, 218 Mo. 598, 117 S. W. 1104; Nanson v. Jacob, 93 Mo. 331, 6 S. W. 246; Valle's Heirs v. Fleming's Heirs, 29 Mo. 152; Deer v. Deer's Estate, 180 S. W. (Mo. App.) 572.]

Nor is there any merit in the contention of plaintiff's counsel that Adkins is not in a position to invoke the plea of estoppel against the plaintiff in this proceeding, because he was not a party to the partition suit and was not affected thereby. In making this contention, counsel overlook the very foundation of the doctrine of equitable estoppel. Had the plaintiff, instead of asserting her claim against her father's estate, then elected to assert it against Adkins, he could have then sought relief for his loss, if any, against the heirs of Hiram L. Prewett, plaintiff's father, he (Prewett) being one of the grantors in Adkins's chain of title by warranty deeds. [Sec. 2270, R. S. 1919.] By reason of the course then adopted by plaintiff, Adkins did not meet her then as one of Prewett's heirs, but he does meet her now, and in a court of equity, where we find her attempting to assert the very title interest that she released, in the eye of equity, to her father's estate, and the very title interest that then immediately passed to Adkins by enurement. [Sec. 2266, R. S. 1919.] "A court of equity once in possession of the *res* and having jurisdiction of the parties will not relinquish its hold until it has done complete and adequate justice to all of the parties. It has a long arm for so doing." [Switch & Signal Co. v. Trust Co., 236 S. W. (Mo.) 1. c. 62.] The trial chancellor found for Adkins on the issue of estoppel, and accordingly adjudged "that the plaintiff has no right, title, interest or estate in and to the said premises and that whatever interest, if any, was ever vested in the plaintiff Willie Myrtle Roberts is hereby divested out of the said Willie Myrtle Roberts, plaintiff herein, and vested in the defendant, R. A. Adkins, and that the plaintiff is and shall be forever estopped from asserting any right, title, interest or estate in the land in controversy." In the case of Hubbard v. Slavens, *supra*, in which the same principle was involved, Judge LAMM said:

"Whether in strictness of speech, a title may be '*created*' by estoppel is a refinement of no value in the light of modern equity jurisprudence. If A by his actions and conduct, having not spoken when in conscience he should speak, is estopped to speak when in conscience he should keep quiet, if he by ratification with knowledge, by the receipt of purchase money, by turning over possession or by similar means is estopped to assert title in himself and is also estopped, by the same token, to deny title in B, if he has retained the bare naked legal title to the land under such condition of things

as makes him seized merely to B's use—we say, if these things occur (as they do, as shown by this answer) then rounded-out justice demands that one other step be taken, *viz.*: when B asks it in his pleading the chancellor should not let go of his jurisdiction until A's naked and bare legal title is vested out-and-out over into B who already holds the beneficial title—this under the maxim that equity considers that done which should have been done.'' [218 Mo. 1. c. 620.]

The finding of the trial chancellor on the issue of estoppel is supported not only by substantial evidence, but by the greater weight of the evidence, and such evidence is competent and material and was therefore, properly admitted. The judgment rendered is in harmony with well established principles of equity and it is a righteous judgment. It is accordingly affirmed. *Higbee* and *Davis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.