O. E. CLARK, Appellant, v. U. S. CLARK ET AL.; CORA C. DENT, Respondent.—18 S. W. (2d) 77.

Division Two, June 4, 1929.

*E. W. Bennett* for appellant.

*Wm. P. Elmer* and *Lee F. Kinder* for respondent.

HENWOOD, C.—This is an action for the partition of certain real estate situated in the city of Salem, in Dent County. The first trial, in the Circuit Court of Dent County, resulted in a judgment for the defendant Cora C. Dent, and, on the appeal of the plaintiff O. E. Clark to this court, the judgment was reversed and the cause remanded. [Clark v. Clark, 319 Mo. 591, 4 S. W. (2d) 807.] The venue was changed to the Circuit Court of Wright County, where, by virtue of the amended answer of the defendant Cora C. Dent, the case was converted into a proceeding in equity. The chancellor found the issues for the defendant Cora C. Dent and rendered judgment accordingly, thereby adjudging her to be the absolute owner of the real estate in question. The case is here for review again on the plaintiff's appeal.

The real estate sought to be partitioned is a part of the southeast quarter of the southeast quarter of Section 13, Township 34 North, Range 6 West, in Dent County, Missouri, the same being described in the petition by metes and bounds. The plaintiff alleges that Laura A. Clark, widow of Hamlet Clark, died seized of said real estate, leaving as her heirs at law three sons, O. E. Clark, U. S. Clark, F. L. Clark, and a daughter, Cora C. Dent; that the respective interests of the plaintiff and the defendants in said real estate are as follows: O. E. Clark, plaintiff, and U. S. Clark and Cora C. Dent, defendants, each one-fourth, Alice Clark, defendant, widow of F. L. Clark, dower interest in one-fourth, and Lawrence Clark, Frank Clark, Paul Clark, Pauline Clark, and Kathaleen Clark, defendants, children of F. L. Clark, each one-twentieth, subject to the dower interest of their mother, Alice Clark.

In her answer, the defendant Cora C. Dent bases her claim of ownership of said real estate upon an alleged devise of the same to her in the last will and testament of her father, Hamlet Clark, made in accordance with and in confirmation of a parol partition of his

lands among all of his children, above named. She further asserts that the plaintiff and all of her co-defendants herein are estopped from claiming any interest in said real estate, because they, or those persons under whom they claim, agreed to the terms and provisions of such parol partition and accepted their respective shares of lands thereunder, as confirmed by the last will and testament of Hamlet Clark. She admits that, at the time of the purchase of said real estate, the same was conveyed to Laura A. Clark, and the legal title thereto was taken in her name, but states that all of the purchase price thereof was paid by Hamlet Clark, and that, at the time of such parol partition and at the time of the execution of his will, Hamlet Clark and all of his "heirs" believed and were under the impression that he was the owner of said real estate, and had a right to convey the same. And she further states that the defendants U. S. Clark, Alice Clark, Lawrence Clark, Frank Clark and Paul Clark have, by deeds, conveyed to her all of their right, title or interest in said real estate.

The defendants U. S. Clark, Lawrence Clark, Frank Clark and Paul Clark defaulted, failing to answer, and the cause was dismissed as to the defendant Alice Clark, upon the suggestion of her death.

In their separate answer, the minor defendants Pauline Clark and Kathaleen Clark, through their guardian *ad litem,* ask that each of them be adjudged to have a one-twentieth interest in said real estate.

The plaintiff's reply to the answer of the defendant Cora C. Dent is a general denial.

According to the undisputed facts, Hamlet Clark owned 1800 acres of land in Dent County, 1,000 acres known as the Copeland tract and 800 acres known as the home farm. In 1897 the Copeland tract of 1,000 acres was equally divided, by parol partition, among his four children, O. E. Clark, U. S. Clark, F. L. Clark and Cora C. Dent, as to values but not as to acres, and said parol partition was confirmed by devises made to each of his children in his last will and testament. In 1901 Hamlet Clark, with the view of spending his declining years in the city of Salem, purchased the piece of improved town property now in controversy. All of the purchase price of said property was paid with his own money, but the title thereto was taken in the name of his wife, Laura A. Clark. He made extensive improvements on the town property and paid for the same with his own money, and then he and his wife left the farm and moved into said property and occupied it as their home until the time of his death, in 1903. They enjoyed there the close companionship of their daughter, Cora C. Dent, who lived on the adjoining property. After her husband's death, Laura A. Clark occupied the town property as her home until the time of her death, in 1923.

The death of their son, F. L. Clark, occurred within a few months after the death of his mother.

According to the evidence offered on behalf of the defendant Cora C. Dent, after the purchase of the town property by Hamlet Clark he and his wife and their four children entered into a parol partition of the home farm of 800 acres and the town property, with the agreement and understanding by all that Hamlet Clark would will and devise the home farm and town property in accordance with the terms of said parol partition. It was the expressed desire of Hamlet Clark, at the time of said parol partition, that his three sons, O. E., U. S. and F. L. Clark, should have the home farm, subject to the payment of taxes and a rental charge of $200 per year as long as he and his wife lived, and that they should later agree among themselves which one of them should become the permanent owner of it, in order to keep it intact and in the Clark name, and that his daughter, Cora C. Dent, should have the town property, subject to the life estate of his wife, Laura A. Clark. In pursuance of said parol partition, O. E. Clark, under an agreement with his brothers, U. S. and F. L. Clark, took possession of the home farm, and after his father's will was made, but before his father's death, bought the shares of his brothers, U. S. and F. L. Clark, in the home farm. He paid the taxes and also paid the rental charge of $200 per year to his father until his father's death, and thereafter to his mother until her death, all as agreed at the time of said parol partition and as confirmed by his father's last will and testament. Shortly after said parol partition, in March, 1903, Hamlet Clark executed his will, in which he, as above indicated, devised to his four children their respective shares in the Copeland tract of 1,000 acres, in accordance with the parol partition thereof, and, in accordance with the parol partition of the home farm and the town property, devised the home farm of 800 acres to his three sons, O. E., U. S. and F. L. Clark, subject to the payment of a rental charge of $200 per year to his widow, Laura A. Clark, during her life or widowhood, and made the following provision as to the town property:

"Seventh. *It is my will, wish and desire* that Cora M. Dent after my death and the death of my wife, have and hold the house in Salem in which I now reside, being located in Section Thirteen, Township Thirty-four N. R. 6 W." (Our italics.)

Under other provisions of his will, he bequeathed to his wife his household goods and furniture, and, during her life or widowhood, the income derived from certain bank stock and the rent derived from the home farm, and gave the residue of his estate to his four children in equal shares. He died in September, 1903. In October, 1903, his will was duly probated in the Probate Court of Dent County, and,

in due time, his estate was administered, settled and distributed, in full accordance with the provisions of his will. After the death of his widow, Laura A. Clark, in 1923, Cora C. Dent took possession of the town property. Both before and after the death of Hamlet Clark, his four children accepted and enjoyed their respective shares in his lands, or the fruits thereof, in accordance with the two parol partitions of his lands and the provisions of his will in confirmation of such parol partitions, without question or dispute, until the filing of this suit for the partition of the town property by his son, O. E. Clark, upon the theory that his mother died intestate and seized of said property and that he and the defendants, as her heirs at law, are now the owners of said property.

Cora C. Dent, her husband, E. F. Dent, and her brother, U. S. Clark, testified that the two parol partitions of Hamlet Clark's lands were effected after all of the matters relating thereto were talked over and fully understood and agreed to by him and his wife and four children; that the respective rights and interests of his wife and four children in his lands, as provided for in said parol partitions and in his will, were accepted and ratified by all concerned, both before and after his death, this suit, filed after the death of his wife and more than twenty years after his death, being the first indication of any dispute among his children; and that it was his apparent desire that his children should share equally in his estate, nothing being said or intimated by him as to any discrimination against Cora C. Dent. Cora C. Dent testified that she never knew that the deed to the town property was made in her mother's name, until her brother, F. L. Clark, told her, about ten years after her father's death; that her father never said anything to her about spending more money on her education than the education of the boys, but did say that it would be better for her to have the town property than an interest in the home farm. U. S. Clark testified that he first learned that the deed to the town property was made in his mother's name after his mother's death, when his brother, O. E. Clark, told him; and that he heard his mother say on several occasions that the town property would belong to Cora after her death. E. F. Dent testified that he and his wife asked Mrs. Clark, his wife's mother, to make a deed, conveying the town property to Cora, "in order to make everything clear and satisfactory," and Mrs. Clark said "it belonged" to Cora; "wouldn't be no trouble about it, or no question about it;" her husband had fixed it; "there wouldn't be any of the children make any objection or kick about the way it was."

Dr. Welch, the family physician, testified that Mrs. Clark told him that she and her husband and their children had an agreement concerning the division of her husband's estate and that he had

made his will in accordance with that agreement; and that "he willed some land to the boys and willed Mrs. Dent this home that she was living in; that she would see that that was done; that she would see that Mrs. Dent had this property."

Frank Clark, son of F. L. Clark, testified that in 1923 Dr. Welch attended him during a sick spell of two weeks, in his grandmother's home; that he "overheard" a conversation between his grandmother and Dr. Welch; and that he "heard her say that after her death that property would belong to my Aunt Cora Dent."

On behalf of the plaintiff, L. C. McSpadden, County Surveyor of Dent County for forty-five years, testified that he made a survey of all of the Clark lands in 1893; that in 1896 he ran some division lines of the Copeland tract, but no official record was made of it; and that "no division was made of home place."

The plaintiff was the only other witness in his behalf. He testified that a parol partition of the Copeland tract was made, agreed to, accepted and acted upon, in 1897, as devised to him and his brothers and sister in his father's will, but there was never any parol partition as to the home farm and the town property; that the provisions of his father's will as to the home farm and town property were not previously agreed upon by his father and mother and their children; that, before his father made his will, he said he wanted each of the boys to have an equal share in the home farm, but "one had to buy the other two out; he wanted it left intact and to go to one of them;" that his father said Cora "had been educated above the boys and the boys had stayed at home and worked and she had went to school; she had been a spender while they had been savers; he didn't think she was entitled to as much;" that, before his father's death and about the time his father's will was made, he bought the shares of his two brothers in the home farm; that he took possession of the home farm, paid the taxes, and also paid an annual rental charge of $200 as long as his father lived, and thereafter to his mother until her death twenty years later; that he knew, at the time the town property was purchased by his father, that the deed was made in his mother's name; that he and his brother, F. L. Clark, were present at the time his father's will was made, the will being drawn by Mr. McDonald, a notary public; that, referring to the town property, Mr. McDonald said to his father: "Ham, that don't belong to you; you can't will away something that belongs to someone else;" and his father said: "Let it go then; she can make what disposition she wants to." On cross-examination, he admitted that, after the discussion of the town property, his father instructed Mr. McDonald to write into his will the provision above quoted as to the town property, and that he made no objection to such pro-

vision at that time. He also admitted that he never told either of his brothers or his sister about the title to the town property being in his mother's name until after his mother's death. He said his mother told him that "her property was going to be equally divided; they had been trying to get her to make a will to them and she wouldn't do it." He also admitted that he and his brothers and sister discussed with their father the matter of his making a will. When asked if they discussed with their father the matter of giving Cora the town property in lieu of an interest in the home farm, he said: "It might have been; but we didn't decide it." He also admitted that, before his father's will was made, it was agreed by and between his father and him and his brothers that the home farm was to be willed to him and his brothers. He also admitted that, after his mother died, he demanded that his sister account to him for a one-fourth interest in the town property. In this connection, he was further cross-examined as follows:

"Q. At that time you told Mrs. Dent that you considered that made a flaw in the title and *you would not have to abide by any agreement you made before that time,* because your father did not own the land at the time he made the will? A. *Yes, sir.*" (Our italics.)

I. It seems perfectly clear that the findings of the chancellor are supported by the greater weight of the competent evidence, and that the judgment rendered below is in accordance with well-established principles of equity. notwithstanding the contentions of the plaintiff to the contrary.

The plaintiff admits that in 1897 he and his brothers and sister shared equally in a parol partition of the Copeland tract and the said parol partition was fully confirmed in his father's last will and testament. And, in our opinion, the evidence as a whole leads irresistibly to the conclusion that there was a parol partition of the home farm and the town property, between 1901 and 1903, and that it was likewise confirmed by the provisions of the will. True, there is a presumption that, when Hamlet Clark purchased the town property with his own money and caused it to be conveyed to his wife, he intended the conveyance as a provision for his wife, but such presumption is rebuttable, and was overcome, we think, by proof of a contrary intention. He bought the town property in 1901, four years after the division of the Copeland tract among his children. At that time, he was planning to live in Salem during his last days and was considering the matter of making a division of the remainder of his property. He desired that his three sons should share

equally in the home farm, but insisted that it should be owned by only one of them, in order to keep it intact and in the Clark name. This was agreed to and actually accomplished about the time he wrote his will, in which he devised the home farm to his three sons. His daughter says he suggested to her that it would be better for her to have the town property than an interest in the home farm. The provision in his will that she "have and hold" the town property, after the death of his wife, indicates that it was his intention for her to share equally with his sons in his estate. From these and other attending facts and circumstances, it clearly appears that he did not intend to give the town property to his wife at the time the title thereto was taken in her name, and therefore a trust resulted in his favor at that time. [See Bender v. Bender, 281 Mo. 473, 220 S. W. 929, and authorities cited.] After the town property was acquired, he discussed with his wife and all of his children his plans for the division of the remainder of his property and his desire to make his will in conformity therewith. His daughter, Cora C. Dent, her husband, E. F. Dent, and one of his sons, U. S. Clark, say that, following those discussions, his wife and children agreed to a parol partition by which his three sons, O. E., U. S. and F. L. Clark were given the home farm in equal shares, with the understanding that one of them should buy the shares of the other two and pay an annual rental charge of $200 to his father as long as he lived and thereafter to his mother as long as she lived, and his daughter, Cora C. Dent, was given the town property, subject to her mother's life estate; and that it was further agreed and understood that he would confirm said parol partition in his will. Dr. Welch says that Mrs. Clark told him her husband's will was made in accordance with an agreement. with her and their children, whereby the boys were to have the home farm and the daughter was to have the town property after her death. Frank Clark, son of F. L. Clark, says he heard his grandmother tell Dr. Welch that the town property would belong to his aunt Cora after her death. F. L. Clark died soon after the death of his mother, but he received his share of the Copeland tract and also his one-third share in the home farm, which he sold to his brother, O. E. Clark. The plaintiff, O. E. Clark, is the only one of the family who denies that there was a parol partition of the home farm and the town property. But, he admits that he and his two brothers agreed with his father, before his father's will was made, as to his father's plan of dividing the home farm, and that he and his two brothers shared the home farm as provided in that agreement and in his father's will. He also admits that the plan of giving his sister the town property in lieu of an interest in the home farm "might have been" discussed by his father with him and

the other children, but says no decision was reached as to that matter. He also admits that he heard his father tell Mr. McDonald to write into his will the provision concerning the disposition of the town property, after Mr. McDonald had suggested to his father that his father did not own the town property and could not dispose of it by his will. And he also admits that, after his mother's death, he told his sister that, because of the "flaw" in the title to the town property, he "would not have to abide by any agreement made" (by him) "before that time." In view of Hamlet Clark's right to dispose of his equitable interest in the town property and the facts and circumstances showing his intention to do so, the use of the words, "It is my will, wish and desire," in devising his interest in said property, were entirely sufficient to constitute a testamentary disposition thereof. [40 Cyc. 1046-D.] Considering the evidence adduced by the defendant Cora C. Dent and the admissions of the plaintiff, in connection with the provisions of their father's will and the acts of his widow and children in accepting their respective shares of his estate as provided therein, we can only conclude that there was a parol partition of the home farm and the town property, as claimed by the defendant Cora C. Dent; that said parol partition was fully confirmed by her father's will; and that, by virtue of said parol partition, the devise in her father's will, and her possession of the town property, she is entitled to be adjudged the absolute owner of the town property and vested with the title thereto. [Edwards v. Latimer, 183 Mo. 610, 82 S. W. 109; Sutton v. Porter, 119 Mo. 100, 24 S. W. 760; Nave v. Smith, 95 Mo. 596, 8 S. W. 796; Hazen v. Barnett, 50 Mo. 506.]

Moreover, the plaintiff and all of the co-defendants of Cora C. Dent herein are now estopped, in equity and good conscience, from asserting any claim to or interest in the town property, because they, or the persons under whom they claim, agreed to said parol partition of the home farm and town property, and accepted their respective shares as provided for therein and as confirmed by the will of Hamlet Clark. [21 C. J. 1216 (221), 1221 (225); Herman on Estoppel (2 Ed.) sec. 730; Hubbard v. Slavens, 218 Mo. 598, 117 S. W. 1104; Roberts v. Adkins (Mo. Sup.), 5 S. W. (2d) 70; Young v. Sangster (Mo. Sup.), 16 S. W. (2d) 92.]

II. Reference to the decision of this court on the former appeal of this case (Clark v. Clark, 319 Mo. 591, 4 S. W. (2d) 807) will readily disclose that there was a substantial difference between the record before the court at that time and the record now under consideration, both as to the pleadings and the evidence. This explains the difference between our rulings on the records made at the first and second trials of the case.

1230

The judgment rendered below is right, just and equitable. It is accordingly affirmed. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.